## STRAUGHAN v. COOPER.

No. 3085.   Opinion Filed February 28, 1914.

(139 Pac. 265.)

1. **CONTRACTS—Avoidance—Incompetency to Execute—Intoxication.** A person so destitute of reason as not to know the nature or consequences of his act, although such mental condition be the result of his voluntary intoxication, may avoid a contract made by him at such time.

2. **NEW TRIAL—Motion—Essentials—Diligence.** A motion for a new trial upon the grounds of newly discovered evidence may be denied if facts constituting due diligence to have discovered same in time for the trial had be not stated therein.

3. **APPEAL AND ERROR—Exceptions Below—Instructions.** An instruction to the jury will not be considered here unless exception thereto was reserved in the trial court.

4. **SAME—Bills and Notes—Verdict—Sufficiency of Evidence.** The sufficiency of the evidence to sustain a judgment will be determined in the light of the evidence tending to support same, together with every reasonable inference deducible therefrom, rejecting all evidence adduced by the adverse party which conflicts therewith.

(Syllabus by Thacker, C.)

*Error from District Court, Kay County;*
*W. M. Bowles, Judge.*

Action by B. C. Straughan against W. M. Cooper on a promissory note. Judgment for defendant, and plaintiff brings error. Affirmed.

*L. C. Brown* for plaintiff in error.

*Sam K. Sullivan* for defendant in error.

Opinion by THACKER, C.   Plaintiff in error, as plaintiff, on April 1, 1910, sued defendant in error, as defendant, upon a note dated May 23, 1907, due one year after date, for the principal sum of $475, bearing interest at the rate of 10 per cent. per annum from its date, and purporting to have been executed by defendant to plaintiff at Arkansas City, Kan.; and defendant's answer consisted of a general denial and also of allegations as follows:

"Defendant specifically denies the execution of said note, and alleges that if at any time he signed the said note, he was in such an intoxicated condition that he has no recollection or knowledge of having signed it, and at the time was entirely dethroned of reason, and specifically alleges that there was no consideration for the signing of the same at the date it was alleged to have been signed, and that the same is wholly without consideration, and never was executed by the defendant."

These allegations were denied by plaintiff's reply, and, upon the issues thus formed, a trial was had on December 14, 1910.

There was undisputed evidence to the effect that defendant signed the note sued on (and, according to plaintiff's testimony, this was in plaintiff's office with only himself and defendant present), and at the same time gave his personal check to the plaintiff for $200, which check was paid.   It further appears that there was no consideration for the same other than the then past-due indebtedness of the defendant to plaintiff's firm, known as Straughan Bros., evidenced by fifteen smaller notes made in 1901-3 for the aggregate principal sum of $339.75 (on which $58 interest had accrued) of which nine such notes in the aggregate principal sum of $264.75 (on which $26.09 interest had accrued) were then more than five years past due and, if not theretofore actually discharged, were subject to the bar of the statute of limitations, and six other such smaller notes in the aggregate principal sum of $75 (on which $31.91 interest had accrued) were not subject to such defense; but the plaintiff testified he did not remember the number of notes nor the denomination of any of them, nor what notes were surrendered in consideration of the note now sued on and the $200 check, as he or his firm had had so many transactions

with defendant, and had held other notes against him; and plaintiff was not more specific than herein stated as to such transactions. The defendant testified that on the occasion when he must have signed the note and check he spent two or three days in Arkansas City on a drunk, and did not remember when or where he signed them, nor any fact relating thereto, except that on his return home he found he had in his pocket the fifteen smaller notes mentioned, which, although he had made several prior payments, were all the notes ever surrendered to him; also that he was drunk at the time of signing some of these fifteen notes, and did not remember it. In answer to question as to what he was doing there, defendant testified he was trying to drink up all the whisky there, he "reckoned"; that that was all he remembered doing.

Joseph James testified that he accompanied defendant to Arkansas City on the occasion when it appears he signed the note sued on the check; that witness was with defendant during all his stay there, except about three-quarters of an hour, when he was getting his team in preparation for their return home, and defendant got drunk within half hour after arrival, and remained drunk during all the time he was there; that when he went for the team he left defendant at a store, and when he returned found him on the street at another place and helped him into the buggy, and left with him for home; that defendant was drunk enough to stagger and to require assistance to get into the buggy, and soon after they started home fell asleep and slept "for four or five miles," and while *en route* exhibited to witness a bundle of papers which witness then supposed was money, although the trial court did not permit this to stand as evidence; but this witness testified only in general terms as to being with defendant, and as to the fact that he was drunk before he was taken into the buggy for the start home, and was not questioned as to the transaction in which the note sued on and the check were signed.

The plaintiff further testified he went to defendant's home several times, specifying two such times, after the note sued on matured, and attempted to collect the indebtedness of the defendant; but defendant denied any such attempt, except that on one

occasion plaintiff and his brother came to his home, and the follow-ing conversation occurred:

"He says: 'Bill, have you got any money for me?' And I said, 'No,' and his brother was with him, and his brother said something to me; he says, 'If you had money,' he says, 'you would give it to somebody else, wouldn't you?' 'Well,' I says, 'I don't know as I would.' I says, 'I don't know as I owe you any-thing,' I said to his brother, and that is about the only conversation we had there that day."

At the time the fifteen smaller notes were taken by Straughan Bros., this firm was engaged in selling "stock" and loaning money, and plaintiff, who was engaged in the banking business at the time of the trial in the court below, also was part owner of the Eagle Jewelry Store in Arkansas City, where Straughan Bros. then had their office, from which, together with his well-worded testimony and appearance on the witness stand, we cannot say but that it may have been inferred by the jury that he was a capable business man; and we cannot say but that it may have appeared to the jury that defendant, who was a resident of the Kaw Reservation, and could neither read nor write, except to write his name, was a very illit-erate and incapable man in respect to busines transactions. Fraud was not alleged against plaintiff; and no instruction was requested or given on the theory of either fraud or failure of consideration.

In considering this case, we must, in deference to the verdict and judgment in the trial court, assume as true every fact which the evidence for defendant reasonably tends to prove, including every reasonable inference deducible therefrom, in his favor, dis-regarding as not true all evidence for the plaintiff which is in con-flict therewith; but, after doing this, the evidence seems barely sufficient to sustain the judgment. However, we cannot quite say that the judgment is without the support of any evidence in any essential particular. See *Swan v. Talbot,* 152 Cal. 143, 94 Pac. 238, 17 L. R. A. (N. S.) 1066.

Assuming that the jury found that the note and check were signed during the three-quarters of an hour when Joseph James left the defendant alone just before the start home; that the nine smaller notes had been paid or otherwise discharged before they became subject to the bar of the statute of limitation, though left

in the hands of plaintiff; that there was no consideration for the $475 note and the $200 check except the six small notes aggregating the principal sum of $75, with accrued interest amounting to $31.95; that the defendant, an illiterate man, was wanting in business knowledge and capacity, even when sober, in explanation of his conduct when plaintiff called on him after the maturity of the $475 note, and asked him if he had any money for him; and that the plaintiff was an experienced and capable business man, and yet made no reasonable attempt to explain the discrepancy between the apparent consideration given and the $475 note and the $200 check, nor to further elucidate the transaction, nor to meet derogatory evidence otherwise than indicated, although interrogated in that regard, and thus discredited and invited rejection of his own testimony (*Moore v First Nat. Bank, Iowa City,* 30 Okla. 623, 121 Pac. 626)—we cannot say but that there was some evidence from which the jury might have found that when defendant signed the $475 note he was so destitute of reason as not to know the nature or consequences of his act, and therefore incapable of giving such assent as is requisite to the meeting of minds in an agreement which has the legal effect of an unavoidable contract.

In the case of *Coody v. Coody et al.,* 39 Okla. 719, 136 Pac. 754, it is in effect held that a person so destitute of reason as not to know the nature or consequences of his act, although such mental condition be the result of voluntary intoxication, cannot meet the mind of another in agreement, and is incapable of making a contract which is not voidable; and in that case the history and reasoning that have marked such defenses are reviewed, and the authorities are extensively cited.

The question as to whether defendant was in such incapacitating state of mind was apparently fairly submitted to the jury, in instructions to which no objections or exceptions were taken by the plaintiff; and, if there was error, the same was waived by failure to except, and cannot be considered here. Rev. Laws 1910, sec. 5003, and notes and citations; *Finch et al. v. Brown et al.,* 27 Okla. 217, 111 Pac. 391; *Taylor et al. v. Johnson et al.,*

23 Okla. 50, 99 Pac. 645; *Carter & Bro. v. Missouri M. & L. Co.,* 6 Okla. 11, 41 Pac. 356; *Berry v. Smith,* 2 Okla. 345, 35 Pac. 579.

With plaintiff's motion for new trial, and as newly discovered evidence, there was an affidavit of one Daniel Bunnell, to the effect that defendant told affiant of his purpose to execute the note sued on before he did so, and about the time of the maturity of the same mentioned to affiant his desire and inability to pay it, and sought a loan of affiant for the avowed purpose of doing so; but, although plaintiff presented therewith his own affidavit, to the effect that he had no means of ascertaining the facts stated in the Bunnell affidavit in time to have availed himself of same at the trial, he did not negative the existence of facts which should have excited inquiry leading to discovery, nor otherwise state facts constituting due diligence to have made such timely discovery; and the motion for new trial was in this respect insufficient. Rev. Laws 1910, sec. 5033, subd. 7, p. 1367, and notes; *Burns v. Vaught,* 27 Okla. 711, 113 Pac. 906; *Wiers et al. v. Treese,* 27 Okla. 774, 117 Pac. 182; *Hobbs v. Smith et al.,* 27 Okla. 830, 115 Pac. 347, 34 L. R. A. (N. S.) 697.

The judgment of the trial court should be affirmed.

By the Court: It is so ordered.