## ST. LOUIS-S. F. RY. CO. v. FLOYD, Adm'x.

No. 18359. Opinion Filed Nov. 18, 1930.

E. T. Miller and Stuart, Cruce & Franklin, for plaintiff in error.

Anglin & Stevenson and Forrest M. Darrough, for defendant in error.

SWINDALL, J. This action was commenced in the district court of Pontotoc county, Okla., by Ethel Floyd, administratrix of the estate of Ben Floyd, deceased, as plaintiff, against the St. Louis-San Francisco Railway Company, as defendant. The action is brought under the Federal Employers' Liability Act (45 USCA secs. 51-59). The parties will be hereafter referred to as they appeared in the trial court.

Ben Floyd, deceased, was killed while in the employ of said defendant railway company in the capacity of a car repairer at Mill Creek, Okla. on the 29th day of June, 1925, and at the time of the death of said deceased, he resided at Ada, in Pontotoc county, Okla. Said deceased, at the time of his death, left surviving him, Ethel Floyd, his widow, 44 years of age; and Mildred Floyd Arnold, a daughter, 23 years of age; Furman Floyd, a son, 20 years of age, and Fannie Floyd, a daughter, 13 years of age, and the said Ethel Floyd, Furman Floyd, and Fannie Floyd resided at the home of said deceased, and were dependent upon him for their support.

Plaintiff alleges that on the 28th day of June, 1925, said defendant, through its servants, agents, and employees, ordered the said intestate, Ben Floyd, to take the midnight passenger train at Ada, Okla., and proceed to Mill Creek, Okla., to repair a car that had been set out on a sidetrack at Mill Creek, Okla., in bad order; that in response to said order, said plaintiff's intestate loaded the tools necessary for him to use in the repair of said car at Ada, Okla., into the baggage or express car on said train, and then entered the day coach for the purpose of riding to Mill Creek, Okla., as ordered.

Plaintiff further states that Ben Floyd, after boarding the day coach, advised the conductor, the agent in charge of the train, of his destination and his mission and was assured by him that said train would stop for him to get off at Mill Creek, Okla.

Plaintiff further states that the train stopped at Mill Creek, Okla., momentarily; that immediately plaintiff's intestate got off the train, went forward to the car in which his tools had been loaded; that same had not been thrown off by any other servant, agent, or employee of the defendant and that there was no one unloading or attempting to unload same; that said deceased got into the baggage car, for the purpose of unloading the tools, which were to be used in the work at Mill Creek, for the defendant, and it being necessary to have said tools to fulfill the mission at said place, and that while unloading the tools and before completing, the train started out without any notice to plaintiff's intestate, or without any warning to him, and by the time the tools and appliances were unloaded, the train was running at a considerable speed; that it was nighttime and not knowing the speed at which said train was running, but intent upon getting the tools and appliances off, and getting off himself, at Mill Creek, to do the bidding of the defendant, he attempted to alight from said train, and was thrown violently upon the ground and sustained injuries that caused his immediate death.

Plaintiff further states that it was the duty of said defendant, its agents and employees, after ordering defendant's employee, Ben Floyd, to proceed to Mill Creek, Okla., for the purpose of repairing a certain car, to transport him to his destination and to stop said train long enough for said deceased to unload his tools and equipment, or to have his tools and equipment unloaded for him, and which this defendant did not

do, but, disregarding the duties it owed to plaintiff's intestate, it started said train before plaintiff's intestate could get the tools and appliances off and alight himself, and without notice to plaintiff's intestate, and in so doing, the defendant wholly disregarded the rights of plaintiff's intestate and negligently and carelessly started said train while said deceased was attempting to unload the tools and appliances necessary for the work for which he was sent, and alight himself, and that said negligence was the proximate cause of the death of said deceased.

A demurrer was filed to plaintiff's petition, which was by the court overruled and exceptions allowed. The defendant then answered, its answer consisting, first, of a general denial; second, the defendant pleaded contributory negligence; and third, assumption of risk. The plaintiff replied, denying allegations of new matter set forth in the answer. The case was tried to a jury and resulted in a verdict and judgment in favor of the plaintiff. Motion for new trial was filed and overruled, notice of appeal given to this court, and the case is now before us for review upon 24 assignments of error, several of which are not seriously urged in the briefs, and others appear to be waived, and we will only consider such as we deem necessary to dispose of the material errors urged by the plaintiff in error.

First, it is contended that the evidence is insufficient to sustain the verdict. The record shows that evidence was offered by the plaintiff to the effect that Ben Floyd stated to the conductor in charge of the train that he was repair man and had been ordered to Mill Creek to repair a car and that he would have to unload his tools, and the conductor told him he would stop the train long enough for him to unload them. This testimony is denied by the conductor, but from a careful examination of the record, we are of the opinion there was **sufficient** evidence in the record to submit the case to the jury upon the issue that the negligence of the defendant was the direct and proximate cause of the death of Ben Floyd, and that the court did not commit error in submitting the case to the jury for its determination.

"The sufficiency of the evidence to sustain a judgment will be determined in the light of the evidence tending to support same, together with every reasonable inference deducible therefrom, rejecting all evidence adduced by the adverse party which conflicts therewith." Straughan v. Cooper, 41 Okla. 515, 139 Pac. 265.

It is also contended that the instructions of the court do not correctly submit the law of the case to the jury; instruction No. 4, complained of, being that:

"If you should find from the evidence by a preponderance thereof that the death of Ben Floyd was the result of the injury received by him while in the performance of his duties under his employment, or in going to such work in the mode and manner usual and customary in that line of business, and that at said time he was using ordinary care and prudence in the performance of such duties in unloading and alighting from said train, and that he did not know of the dangers, or could not, by reasonable diligence, have known of same, and that his injuries and death were the direct and proximate result of the negligence and carelessness of defendant in failing to stop said train a reasonable time for him to alight and to remove from said train his tools and appliances, you will return a verdict in favor of the plaintiff for all damages resulting to the plaintiff from said injury and death, unless, in addition thereto, you shall find from the evidence facts and circumstances disclosed upon the trial that the said Ben Floyd was also guilty of negligence which contributed to causing his injuries and death, in which case said negligence on his part should be taken into consideration by you in determining the amount of damages sustained by the plaintiff through his death, diminishing the amount in damages which you would otherwise award the plaintiff in proportion to the negligence of the deceased as compared with the combined negligence of himself and the defendant."

Instruction "10-A," complained of and given by the court, is as follows:

"If you find for the plaintiff, you will assess the damages in such sum as you may find she is damaged, not to exceed $32,400."

These are the only instructions given by the court in regard to the measure of damages. We are of the opinion that the first instruction is objectionable for the reason that there was a sharp conflict in the testimony offered by the plaintiff and the defendant relative to the deceased, Ben Floyd, advising the conductor that he had placed certain tools in the baggage car and requested the conductor in charge of the train to hold the train at Mill Creek until the tools were removed by the deceased, Ben Floyd, and that the conductor agreed to do so. Furman Floyd, a son of the deceased, testified he heard his father state

to the conductor on the station platform of the defendant railway company, at Ada, Okla., that he had orders to go to Mill Creek to repair a car and that he would have to unload his tools at Mill Creek, and that the conductor told the deceased he would stop the train long enough for him to unload them. The conductor testified that he had no such conversation with the deceased, and that he did not know that the deceased had loaded any tools in the baggage car. The very gist of this action, as to whether or not there was any negligence on the part of the railway company, is founded upon whether or not the conductor in charge of the train knew that the deceased had loaded his tools in the baggage car, and whether or not he agreed to hold the train long enough for him to unload the same, and the defendant had the right to have the jury advised upon its theory of the case, and the court should somewhere in its charge to the jury have advised the jury that it was the contention of the plaintiff that the conductor in charge of the train knew that the deceased had loaded his tools in the baggage car, and that the conductor agreed to hold the train until deceased might unload the same at Mill Creek. It was the contention of the defendant railway company that the conductor did not know that the deceased had loaded his tools in the baggage car and had not agreed to hold the train at Mill Creek until the same might be unloaded, and if the jury found from the preponderance of the evidence, facts, and circumstances that the conductor knew that the deceased had loaded his tools in the baggage car and would be required to unload same at Mill Creek, and agreed to hold the train a reasonable length of time for him to do so, and that the conductor failed to hold the train a reasonable length of time for the deceased to unload the tools, then the jury might take that fact into consideration with the other facts and circumstances in evidence in the case in determining whether or not the defendant was guilty of negligence, and that such negligence was the direct and proximate cause of the injuries and death of the deceased: and, on the other hand, if they failed to find from the preponderance of the evidence that the conductor knew that the deceased had loaded said tools in the baggage car and intended to unload the same at Mill Creek, and that the conductor held the train a reasonable time for any person to take passage on or depart from the train, and did not see anyone attempting to take passage on or depart from the train when it went forward, then the railway company would not be liable in damages in this case.

Instruction No. 4 assumes that the conductor in charge of the train knew that Ben Floyd had placed his tools and appliances in the baggage car and would have to go to the baggage car to unload the same. Instead of assuming such issue, in the instructions, the court should have instructed the jury upon the theory of the plaintiff and upon the theory of the defendant. The instruction is further objectionable in stating to the jury that in the event they find for the plaintiff, "they will return a verdict in favor of the plaintiff for all damages resulting to the plaintiff from said injuries and death." The instruction should have limited the damages to the actual pecuniary loss sustained and defined the measure of damages in the instruction or elsewhere in the instructions given the jury.

It is well settled law in this state that each party has the right to have his theory of the case fairly submitted to the jury by the instructions given by the court, and this issue being the very gist of this case, as we view the facts and circumstances, we are of the opinion that the court erred in its failure in the instruction complained of, or in any other instruction given, to define this issue to the jury.

"It is the duty of the trial court to clearly submit by appropriate instructions the theory of the defense in accordance with the evidence where the evidence tends to support the same, and failure to do so at the request of the defendant constitutes prejudicial error." Pate v. Smith, 128 Okla. 29, 261 Pac. 189; Spurrior Lumber Co. v. Dodson, 30 Okla. 412, 120 Pac. 934; W. R. Pickering Lumber Co. v. Sherritt, 105 Okla. 52, 233 Pac. 179; A., T. & S. F. Ry. Co. v. Jamison, 46 Okla. 609-612, 149 Pac. 195; Oklahoma Ry. Co. v. Christenson, 47 Okla. 132, 148 Pac. 94; Eccleston v. Edens, 50 Okla. 237, 150 Pac. 882; Mountcastle v. Miller, 66 Okla. 40, 166 Pac. 1057; Holmboe v. Neale, 69 Okla. 183, 171 Pac. 334.

It is also well settled in this state that it is error for the trial court to fail to charge the jury as to the different elements of damages, and to prescribe a rule whereby the jury may clearly ascertain and fix the damages that are recoverable. Southwestern Cotton Seed Oil Co. v. Stribling, 18 Okla. 417, 89 Pac. 1129.

In every damage suit the court should furnish the jury a rule by which to measure the damages and define the different elements for which compensation may be awarded. Willett v. Johnson, 13 Okla. 563, 76 Pac.

174; Fuss v. Williamson, 132 Okla. 283, 270 Pac. 39.

In an action under the Federal Employers' Liability Act for the wrongful death of a railroad car repairer, an instruction on the measure of damages is faulty if it fails to limit the amount of recovery to the present cash value of the future benefits of which the beneficiaries are deprived.

"The question of the proper measure of damages in cases arising under the Federal Employers' Liability Act must be settled according to the principles of law administered in the federal courts." Kennedy v. Walter L. Ross, 213 Ill. App. 447; Chesapeake & O. R. Co. v. Kelly, 241 U. S. 485; Strunks v. Payne (N. C.) 114 S. E. 840; Western & A. R. R. Co. v. Townsend (Ga. App.) 135 S. E. 439.

The measure of damages fixed by the various state courts and approved by the United States court under the Federal Employers' Liability Act seems to be well established. It devolves upon the plaintiff to establish, not only the negligence complained of, but that such negligence was the proximate cause of the death of the plaintiff's intestate, and of the injuries complained of by the plaintiff. This causal connection must be established as a fact and is not to be left to mere speculation or conjecture. This rule does not, however, require that there must be direct proof of the fact or facts, but the same may be established by circumstantial evidence; that is, by such facts and circumstances of such a nature and of such a connection and relation to each other that the conclusion therefrom may be fairly and reasonably inferred after a fair and full consideration thereof.

The defendant requested the court to charge the jury in substance that, if the deceased was guilty of contributory negligence, resulting in the injuries which caused his death, then the plaintiff could not recover. We do not understand this to be the rule under the Federal Employers' Liability Act, but if the jury should find from the evidence that the deceased, Ben Floyd, was guilty of negligence which contributed to the injuries which caused his death, that fact will not bar a recovery by the plaintiff in this case, if the negligence of defendant was the direct and proximate cause of the death of deceased, but the amount of the damage recovered must be diminished by the jury in proportion to the amount of negligence attributable to the said Ben Floyd. In other words, if a jury should find from the preponderance of the evidence that the defendant was guilty of negligence and that the negligence of the railway company was the direct and proximate cause of the injury, and they should further find from the evidence in this case that the accident which caused the death of the said Ben Floyd was caused by the negligence both of the defendant railway company and the deceased, the fact that the deceased was also negligent, and that his negligence contributed to his injuries and death, would not bar plaintiff's right to recovery herein, but the damages which the jury would be authorized to find from the evidence that plaintiff is entitled to recover should be diminished by the jury in its verdict in proportion to the amount of negligence which the jury finds from the evidence is attributable to the deceased.

It was the duty of Ben Floyd to use his sense of sight and hearing to see that which was open and apparent, and hear that which was clear, distinct, and audible, and the law presumes that he did so use his sense of sight and hearing, and the jury should have been instructed that he is charged with knowledge of those things that he could so see and hear, and even though he failed to hear or see those things, the defendant railway company cannot be charged with the consequences of such failure, and such facts should be taken into consideration by the jury in determining whether or not deceased was guilty of contributory negligence, and that the amount of any verdict rendered in favor of plaintiff should be diminished by reason of such contributory negligence.

The court should have instructed the jury that, in the event they found for the plaintiff, in determining the amount plaintiff is entitled to recover in this case, it is competent for them to consider in connection with the matters and things in evidence other matters of common observation, knowledge, and experience which in a greater or less degree might have affected the earnings of Ben Floyd had he lived, namely, the probability, if such there was, of his illness, loss of employment, abstaining from work, reduction of wages, and infirmities of increasing age with corresponding diminution of earning capacity. Taking these matters into consideration, it seems to be the rule announced by the authorities that the measure of damages the plaintiff would be entitled to recover, and the jury is authorized to fix the amount thereof in such sum of money as, if paid in cash at the present time, would fairly compensate the surviving widow and dependent children for the actual pecuniary loss that the jury may find from the evidence they have sustained by reason of being deprived of receiving from deceased, Ben Floyd, what they might reasonably have ex-

pected had he continued to live. By the pecuniary loss is meant the loss which may be computed and compensated for in money. In arriving at the same, the jury may take into consideration the contribution of money or other pecuniary benefits, if any, shown by the evidence, which the surviving widow and minor children would have received from deceased had he continued to live his expected time. In assessing such damages, if any, the jury should confine themselves to the consideration and determination of such pecuniary loss; upon a retrial, if the cause is submitted to a jury, and the jury finds in favor of the plaintiff, they will determine what amount of money paid now will fairly and reasonably compensate the surviving widow of the deceased, Ben Floyd, and the dependent minor children, if any, of said deceased for such pecuniary loss, and in arriving at said amount, the jury will determine the aggregate amount of the contributions in money and other pecuniary benefits which the surviving widow and dependent minor children would have received had deceased lived, and render a verdict in a sum equal to the aggregate amount reduced to its present value diminished by the jury in the verdict in proportion to the amount of negligence, if any, which they may find from the evidence is attributable to the deceased.

In considering the question of damages in determining the sum of money as, if paid in cash at this time, would be sufficient to fairly compensate the surviving wife of the deceased and dependent minor children of the deceased, Ben Floyd, for their pecuniary loss, the jury should be instructed that in determining the present value of such contributions as the surviving widow and dependent minor children would have received from the continued life of the deceased, the jury will make its calculations on the basis of the amount of their award bearing interest at the rate of 6 per cent. per annum.

The rule as to the diminution of the amount of plaintiff's recovery in the event contributory negligence is proven, and the measure of damages to be given the jury as herein stated, seems to be in accord with the authorities as announced by the state courts and the United States court in construing the Federal Employers' Liability Act. Michigan Cent. R. Co. v. Vreeland, 227 U. S. 59, 57 L. Ed. 417, Ann. Cas. 1914C, 176; Kansas City, M. & O. Ry. Co. v. Roe, 50 Okla. 105, 150 Pac. 1035; Griffith v. Midland Valley R. Co., 100 Kan. 500, 166 Pac. 467; Chesapeake, etc., R. Co. v. Kelly, 241 U. S. 485, 60 L. Ed. 1117; Yazoo & M. V. R. Co. v. Decker (Miss.) 116 So. 287; Philadelphia,

etc., R. Co. v. Marland, 239 Fed. 1, 246 Fed. 91; Nashville, etc., R. Co. v. Anderson (Tenn.) 185 S. W. 677, Ann. Cas. 1917D, 902; Louisville, etc., R. Co. v. Johnson (Ky.) 171 S. W. 847; Southern R. Co. v. Hill (Ga.) 77 S. E. 803.

Numerous other errors are assigned by the plaintiff in error, but we feel that upon a retrial of this cause, if the same is retried, the other errors are not likely to occur, as the main issues covered by the assignments of error are disposed of in this opinion and covered by the authorities cited.

For the reasons herein stated, this cause is reversed and remanded to the district court of Pontotoc county, with directions to grant a new trial and take such other and further action and proceedings as may not be inconsistent with the views herein expressed.

MASON, C. J., LESTER, V. C. J., and RILEY, HEFNER, and ANDREWS, JJ., concur. CLARK and CULLISON, JJ., not participating. HUNT, J., absent.