## KLINGE v. SOUTHERN PAC. CO.

No. 5350.   Decided April 3, 1936.   (57 P. [2d] 367.)

Rehearing Denied June 16, 1936.

_Bagley, Judd & Ray,_ of Salt Lake City, for appellant.

_Willard Hanson, Shirley P. Jones,_ and _A. H. Hougaard,_ all of Salt Lake City, for respondent.

EPHRAIM HANSON, Justice.

The plaintiff and the respondent brought this action under the Safety Appliance Act (45 U. S. C. A. § 1 et seq.) and the Federal Employers' Liability Act (chapter 2, title 45, U. S. C. A. §§ 51-59) against the defendant and appellant, first in the district court of the Third judicial district of the state of Utah, to recover damages for a permanent injury sustained by plaintiff in the course of his employment as a brakeman in the employ of the defendant. As shown by the record, the plaintiff in attempting to board a moving freight car and taking hold of the handhold of the car, the handhold, which was defective, gave way, causing the plaintiff to be thrown under the car and so injured his right arm as to require amputation of it several inches below the shoulder, and caused him great pain and suffering from which he continued to suffer at the time of the trial.

He was at the hospital receiving treatment for about a month, and thereafter received further treatment at the doctor's office for a month or six weeks. He at the time of the accident was 33 years of age, and had a life expectancy of 33 years. Prior to the accident he was in good health, strong, and able-bodied. He had been in the employ of the defendant for about 18 years, for the first 8 years doing

carpenter and bridge work, earning from $5 to $7 a day, and the last 10 years prior to the accident as a brakeman in the transportation service, and during such period, as testified to by him, he earned on an average each year $2,400, and as shown by evidence of the defendant at least $154 a month, or about $1,850 a year.

The only experience or training the plaintiff had was in railroading. He had no education, training, or experience to follow any other occupation or vocation, and was not capable of doing any kind of manual work requiring the use of two hands and arms, and since the accident, and up to the time of the trial, he was unable to earn and had not earned anything; that another had to wash his hand, cut the meat he ate, tie his shoes, and assist him in putting on and buttoning some of his wearing apparel, etc.

The case was tried to a jury. The liability of the defendant under the act was not disputed at the trial. The only question submitted to the jury was the amount of damages to be awarded. In such particular the court charged the jury that in determining the amount of damages they should take into consideration all the facts and circumstances in evidence bearing on the nature and extent of the injuries, the pain and suffering, if any, endured by the plaintiff, his loss of time and inability to work, the extent to which his injuries impaired his future earnings, and that:

"In considering the element of loss in wages, if any, which the plaintiff may sustain in the future on account of the loss of his arm, you are instructed that it is proper to consider plaintiff's expectancy of life. You are further instructed, however, that such loss must be figured on the basis of the present value of a yearly income equivalent to the probable reduction of plaintiff's earnings. The most the plaintiff would be entitled to as compensation for the impairment or loss of future earning power would be, not the total amount in wages which he would probably earn during his life expectancy, but the value or equivalent if paid now in a lump sum by the defendant in advance instead of being earned and received in monthly installments during the remaining years of his life.

"You are further instructed that the legal rate of interest fixed by the law of this state is eight per cent, and in computing the present

*worth of money as recited in the foregoing paragraph of this instruction you may figure it on the basis of eight per cent per annum."* (Italics ours.)

Plaintiff took exception to the italicized portion of the charge, and especially to the statement that in computing the present worth the jury "may figure it on the basis of 8 per cent. per annum," the legal rate of interest fixed by the laws of Utah. Rev. St. 1933, 44-0-1.

The jury, on May 13, 1931, rendered a verdict for $12,000 in favor of the plaintiff and against the defendant, upon which judgment was entered accordingly. In due time the plaintiff served and filed a motion for a new trial on the ground of errors of law occurring at the trial and excepted to by the plaintiff; and that the amount of the verdict rendered was inadequate. Upon argument and submission of the motion, the matter was taken under advisement, and on due consideration thereof, and being sufficiently advised, the court, on February 15, 1932, granted the motion and ordered a new trial of the case. Thereafter, and on February 17, 1932, the plaintiff filed a motion dismissing the action without prejudice, and on April 1, 1932, the action on the prior motion of the plaintiff over the objection of defendant was ordered dismissed without prejudice.

On the filing of his motion of dismissal, plaintiff commenced a new second action against the defendant, but planted the same in the federal District Court of Utah to recover damages for the same injury heretofore sought to be recovered in the state district court. On a trial there had to a jury, a verdict was rendered, June 1, 1932, in favor of plaintiff and against defendant for $27,000. A motion for a new trial in the federal court was filed by defendant June 7, 1932. Pending a disposition of that motion, defendant, on July 20, 1932, served and filed a notice of appeal appealing to the Supreme Court of Utah from the order dismissing the action in the state district court. The motion for a new trial in the federal court was denied August 27, 1932, and

on October 29, 1932, the defendant took an appeal from the judgment in the federal court to the Circuit Court of Appeals upon grounds, among others, that the verdict of $27,000 was excessive; that the federal court abused its discretion in refusing to grant a new trial; and that the court erred in refusing the defendant's request to charge on the subject of the present worth of money. The Circuit Court of Appeals refused to disturb the judgment on any of such grounds, but reversed the judgment and ordered a new trial of the case on the sole ground of alleged misconduct of the jury. *Southern Pac. Co.* v. *Klinge,* 65 F. (2d) 85, 87.

The case now before this court is on the appeal taken by the defendant from the order of dismissal of the action without prejudice in the state district court, and while the case in the federal court was and still is pending on the order of the Circuit Court of Appeals granting a new trial. The principal contentions of the appellant are that after the new trial was granted in the state district court, plaintiff without the consent of the defendant was without right to dismiss the action without prejudice, and the court without authority on motion of the plaintiff to so dismiss the action; that the charge which the state district court gave on the subject of present worth of money stated the law applicable in such case; that the verdict of $12,000 rendered by the jury was adequate and that the court abused its discretion in granting a new trial; and, hence, the appellant on this appeal prays that the dismissal of the action be vacated, the granting of the new trial set aside, and that the judgment in favor of the plaintiff and against defendant on the verdict of $12,000 be reinstated as the final judgment in the cause.

On the contrary, it is contended by the respondent that the granting of the new trial set aside both the verdict and judgment and left the case exactly in the position it occupied before there had been a trial and in the same condition as if no previous trial had been had; that the order or judgment of dismissal of the action, though without prejudice,

terminated the litigation in that action, sent the case out of court without a judgment of any kind against the defendant, and thus there was no existing adverse judgment affecting the defendant from which an appeal properly could be prosecuted by it; that the respondent after the new trial was granted had the absolute right to dismiss the action without prejudice and the court authorized to so dismiss it on plaintiff's motion; that the charge of the state court on the subject of present worth, to which the plaintiff had excepted, was erroneous and prejudicial to him, and that upon such ground alone the state district court was justified and authorized in granting the new trial; that the verdict was inadequate; and that no abuse of discretion was shown by the granting of the new trial, the burden of which was on the appellant to show such abuse.

In the first place, if the portion of the charge to which exception was taken, and which the court gave on the subject of present worth, was erroneous and prejudicial to the rights of the plaintiff, there is no merit to this appeal, though all other questions be resolved in favor of the appellant. The case being one brought under the Federal Employers' Liability Act (45 U. S. C. A. §§ 51-59), whether in a state or in the federal court, the doctrine and measure of damages are as announced and ruled by the federal courts, and such rulings are binding on the state courts. Such is the established doctrine generally. In notes in 12 A. L. R. 711, the annotator says:

"The question of the proper measure of damages is inseparably connected wth the right of action, and, in cases arising under the Federal Act (the Federal Employers' Liability Act [45 U. S. C. A. §§ 51-59]) it must be settled according to general principles of law as administered in the Federal Court."

In support thereof, cases are there cited both from the federal and the state courts. The same principle is stated in annotations to U. S. C. A. title 45, Railroads, pages 350, 351, and cases there cited. To that effect is the ruling of

the Supreme Court of the United States in the case of *Chesapeake & O. R. Co.* v. *Kelly,* 241 U. S. 485, 36 S. Ct. 630, 60 L. Ed. 1117, L. R. A. 1917F, 367. In the case of *Laughlin* v. *Kansas City Southern R. Co.,* 275 Mo. 459, 205 S. W. 3, it was held that, in actions arising under the Federal Employers' Liability Act (45 U. S. C. A. §§ 51-59), the measure of damages is to be determined according to the provisions of the act itself and the general common law as administered by the federal courts, unaffected by state legislation or decisions of state courts. In the case of *St. Louis-San Francisco R. Co.* v. *Floyd,* 146 Okl. 42, 293 P. 250, 253, 77 A. L. R. 1431, the court said:

"The question of the proper measure of damages in cases arising under the Federal Employers' Liability Act [45 U. S. C. A. §§ 51-59] must be settled according to principles of law administered in the federal courts."

The cases are numerous to that effect. Such doctrine falls within the well-established rule that state courts are governed in their construction, application, and interpretation of the Federal Employers' Liability Act by the decisions of the federal courts. Notes 12 A. L. R. 715. ■ Thus the rule laid down by some of the state courts in cases where the Federal Employers' Liability Act was not involved, concerning the subject of present worth of money and what rate of interest may be employed in computing the present worth, of which some such cases are cited by appellant, has no application to the instant case.

The rule as to the measure of damages applicable to cases like the case at bar has been before the Supreme Court of the United States in several cases (*Chesapeake & Ohio R. Co.* v. *Kelly,* 241 U. S. 485, 36 S. Ct. 630, 633, 60 L. Ed. 1117 L. R. A. 1917F, 367; *Gulf, C. & S. F. R. Co.* v. *Moser,* 275 U. S. 133, 48 S. Ct. 49, 50, 72 L. Ed. 200, 203), and the identical question here involved considered and determined by the Circuit Court of Appeals in the case of *Southern Pac. Co.* v. *Klinge,* supra. In none of these cases is the rule as to compu-

tation of present worth of money supported or approved as stated in the italicized portion of the charge of the state district court, and by the Circuit Court of Appeals is expressly repudiated. In the Chesapeake-Kelly Case, the Supreme court of the United States said:

"That where future payments are to be anticipated and capitalized in a verdict the plaintiff is entitled to no more than their present worth is commonly recognized in the state courts. We cite some of the cases, but without intending to approve any of the particular formulae that have been followed in applying the principle; since in this respect the decisions are not harmonious, and some of them may be subject to question." (Citing cases.)

### The court there further stated that:

"As a rule, and in all cases where it is reasonable to suppose that interest may safely be earned upon the amount that is awarded, the ascertained future benefits ought to be discounted in the making up of the award.

"We do not mean to say that the discount should be at what is commonly called the 'legal rate' of interest; that is, the rate limited by law, beyond which interest is prohibited. It may be that such rates are not obtainable upon investments on safe securities, at least, without the exercise of financial experience and skill in the administration of the fund; and it is evident that the compensation should be awarded upon a basis that does not call upon the beneficiaries to exercise such skill, for where this is necessarily employed, the interest return is in part earned by the investor rather than by the investment. This, however, is a matter that ordinarily may be adjusted by scaling the rate of interest to be adopted in computing the present value of the future benefits; it being a matter of common knowledge that, as a rule, the best and safest investments, and those which require the least care, yield only a moderate return.

"We are not in this case called upon to lay down a precise rule or formula, and it is not our purpose to do this, but merely to indicate some of the considerations that support the view we have expressed that, in computing the damages recoverable for the deprivation of future benefits, the principle of limiting the recovery to compensation requires that adequate allowance be made, according to circumstances, for the earning power of money; in short, that when future payments or other pecuniary benefits are to be anticipated, the verdict should be made up on the basis of their present value only. * * * But the question of the proper measure of damages is inseparably

connected with the right of action, and in cases arising under the Federal Employers' Liability Act it must be settled according to general principles of law as administered in the Federal courts."

In the Moser Case, supra, the Supreme Court of the United States stated that, in the Chesapeake-Kelly Case,

"We distinctly stated that: 'In computing the damages recoverable for the deprivation of future benefits, the principle of limiting the recovery to compensation requires that adequate allowance be made, according to circumstances, for the earning power of money; in short, that when future payments or other pecuniary benefits are to be anticipated, the verdict should be made up on the basis of their present value only.' The interpretation approved by us has become an integral part of the statute. It should be accepted and followed."

Whatever doubt, if any, there may be as to the application of such cases to the instant case is set at rest by the Circuit Court of Appeals in the *Southern Pac. Co.-Klinge Case*, supra. As is seen, the state district court on the subject of computing the present worth of money charged:

"You are further instructed that the legal rate of interest fixed by the law of this state is eight per cent, and in computing the present worth of money as recited in the foregoing paragraph of this instruction you may figure it on the basis of eight per cent per annum."

In the case brought in the federal District Court to recover on account of the same injury, the defendant requested that court to charge, which request was refused, that:

"You are instructed that the legal rate of interest fixed by law of this state is eight per cent per annum, and in computing the present worth of money as explained to you in these instructions you may, but are not required to figure the present worth of money at eight per cent. You may use any per cent figure which you may find fairly represents the percentage which an investment carefully made may be fairly expected to yield by way of interest."

It thus is seen that the requested charge in the federal District Court is much more favorable to the plaintiff than is the charge as given by the state district court. On appeal

from the judgment of the federal District Court to the Circuit Court of Appeals, the defendant, among other grounds, urged that the federal District Court erred in refusing the defendant's said request. As to that, the Circuit Court of Appeals said:

"Error is assigned because the trial court declined to charge the jury that their verdict should be computed on the assumption that money could safely be invested at eight per cent., the legal rate in Utah. The trial court was clearly right. The jury should determine from the evidence what interest could be fairly expected from safe investments which a person of ordinary prudence, but without particular financial experience or skill, could make in that locality. *Chesapeake & Ohio Ry. Co.* v. *Kelly*, 241 U. S. 485, 36 S. Ct. 630, 60 L. Ed. 1117, L. R. A. 1917F, 367. Whether the statutory rate on judgments is even evidentiary might be questionable; but certainly it is not conclusive."

What the Circuit Court of Appeals in such case involving the Federal Employers' Liability Act, so stated, is binding on the state courts and on this court. The Circuit Court of Appeals, by citing the Chesapeake-Kelly Case in support of the conclusion reached, in effect, if not expressly, held that the request of the defendant *was not in accordance with the rule announced in the Chesapeake-Kelly Case,* and if the request was not in harmony therewith, it clearly follows that the charge of the state district court was not. Such interpretation given the Chesapeake-Kelly Case by the Circuit Court of Appeals is likewise binding on this court. Certainly this court may not give a different interpretation to that case than was given it by the Circuit Court of Appeals. It would be highly presumptuous and against the well-established rule if this court should undertake to do so. There thus is a binding decision on the question that the charge given by the state district court was not in harmony with the rule announced on the subject by the federal courts, and therefore was erroneous, and thus the state district court was not only justified in granting the new trial complained of, but was required to do so.

It is urged by the appellant that, by the use of the word "may" in the charge of the state district court, no binding or mandatory instruction was given the jury to compute the present worth at the rate of 8 per cent per annum. But the court instructing the jury that the legal rate was 8 per cent, and that in computing the present worth the jury "may figure it on the basis of 8 per cent per annum," at least gave the jury to understand that they could do so. As to the rate of interest to be employed, no rate or guide was given the jury, except the legal rate at eight per cent., and not anything indicated or suggested that the jury was at liberty to employ any other rate, or any rate by them thought reasonable under the circumstances of the case. From the language employed, the ordinary jury would understand that in computing the present worth the proper rate to use was the legal rate, and since the jury were told that it was proper to do so, it may well be presumed that the rate of 8 per cent was employed by them in computing the present worth. Besides, the word "may" has a wide scope of meaning, has various meanings, sometimes employed as "must," and often interchangeably with "should." 39 C. J. 1392.

It is also common knowledge that for some time prior to the trial and subsequent thereto, 8 per cent interest was not obtainable on reasonably safe loans or other investments, and that banks handling savings accounts and time deposits paid only 3½ to 4 per cent, and since paid only a little better than half that, and that what loans had been made were difficult of collection and the value of property given as security greatly depreciated. If, by the charge, the trial court viewed the matter that the jury in computing the present worth may have and probably did base the computation on the legal rate, and as the court charged they could do, there certainly was no abuse of discretion in the granting of the new trial. And as shown by the authorities under the rule announced by the federal courts, it would have been

error against the plaintiff had the court refused to grant the new trial.

By argument it is conceded that the rule as to the measure of damages, in a case as here involving the Federal Employers' Liability Act (45 U. S. C. A. §§ 51-59), is as announced and ruled by the federal courts; but it in effect is said that, in the absence of evidence as to the prevailing rate of interest, the jury in computing the present worth of money may do so at the legal rate of 8 per cent. The import of such an argument is not in accordance with the decisions of the federal courts. Here there is evidence to show and it is not disputed that the plaintiff was without education, training, and experience, except what experience he had in doing rough carpenter work and working as a brakeman; and, hence, was without experience in investing funds or loaning money and without experience or knowledge as to the kind of investments or loans that might or could be made with reasonable safety. All that is in the record. In the Kelly Case, supra, it is said that legal rates might not be obtainable upon investments without financial experience and skill in the handling of funds, and that compensation should be awarded upon a basis that does not call for returns which in part are earned by the investor rather than by the investment; and then the court further said that:

"It being a matter of common knowledge that, as a rule, the best and safest investments, and those which require the least care, yield only a moderate return."

So, too, it is common knowledge which this court must judicially know and may not disregard that, at the time of the trial and at all times subsequent thereto, the legal rate of interest at 8 per cent was not obtainable upon any kind of reasonably safe investments or loans, that interest paid on government bonds was only from 2 to 3 per cent, interest paid by banks on time deposits was only from 2 to 3 per cent, and that thousands and millions of dollars are and have been lying idle in banks because such moneys could not

be safely invested in any kind of reasonably safe securities or loans, except at a very small rate of interest, and in many instances could not be safely invested on any kind of securities. And in this very case the Circuit Court of Appeals in reviewing the judgment of $27,000 from the federal District Court held that the court did not abuse its discretion in refusing to grant a new trial upon the grounds that the verdict was excessive, and stated that figured at 4 per cent return, which a jury might fairly find to be all that might reasonably be expected from a safe investment, the verdict was based on a loss of an earning power of $1,500 a year, and that the contention that the verdict was excessive was wholly without merit; and expressly held that the request of the defendant in the federal court as to the rate of interest in computing the present worth was properly refused and was not in accordance with the rule announced by the Supreme Court of the United States in the Kelly Case.

Because of such holding, this court may not now say that the charge of the state district court on the subject, which is many times more flagrant than the refused request of the defendant in the federal court, is in accordance with the Kelly Case. This court may not, in a case as here, in one breath say that it, as to the rule or measure of damages, and as to the computation of present worth of money, is bound by the decisions of the federal courts, and in the next breath put a construction or interpretation on the Kelly Case different from that put upon it by the federal Circuit Court of Appeals and by the Supreme Court of the United States itself in the Moser Case.

To reverse the judgment in this case would mean an approval of the charge of the court below and to establish a precedent for all future cases involving the present worth of money. To establish such a precedent would, in the main, be unreasonable and harmful, for the reason that it is common knowledge that most beneficiaries, receiving compensation or funds involving the present worth of money, are unskilled and inexperienced in the use of funds, and in the

great majority of cases can hope to get only a very moderate return from the use of them.

The court also within its discretion was justified and authorized to grant a new trial on the ground that the verdict was inadequate, in view of the undisputed evidence that the earning capacity of the plaintiff during the last 10 years prior to the accident was about $2,000 a year, that since his disability he was unable to follow or be employed in his usual occupation of railroading or in any other employment of gain or profit or of any substantial remuneration, and since his injury he was unable to earn and had not earned anything. Under all the authorities, great latitude is accorded the trial court in such matter. Cases are cited by appellant where verdicts of $10,000 or less for the loss of an arm were regarded as adequate compensation; but in most such cases the earning capacity of the injured plaintiff was much less than that of the plaintiff in the instant case. In such particular, each case is dependent upon its own facts, and what may be adequate compensation in the one may be inadequate in the other. Hence, a wide discretion is given the trial court in such matter and rarely is interfered with by an appellate tribunal whether the awarded compensation by the court below was held adequate or inadequate. In 46 C. J. 207, the rule is stated that inadequate compensation for an injury sustained is generally ground for a new trial, and that a statute providing that "the jury may give such damages as under all the circumstances of the case may to them seem just," does not affect the court's right to grant a new trial where it deems the damages inadequate. In the case of *Dorset* v. *Chambers,* 187 Mo. App. 276, 173 S. W. 725, the court said that in tort cases the trial judge is as much a trier of facts as the jury and is charged with the final duty of doing justice between the parties. The question before him for solution where the plaintiff asks for a new trial on the ground of an inadequate verdict is not whether the assessment is so inadequate as to shock the judicial concience, and bespeak passion or prejudice on the part of the

jury, but whether it is out of line with the evidentiary facts and circumstances as the judge sees and understands them.

That no abuse of discretion in the instant case was committed by the trial court is clearly indicated by the Circuit Court of Appeals in reviewing the judgment of $27,000 for the same injury, and where it was held that no abuse of discretion was committed by the federal District Court in refusing to grant a new trial on the ground that the verdict was excessive, and where the court said that, "figured on a 4 per cent return, which a jury might fairly find to be all that could reasonably be expected from safe investments, the verdict was based on a loss of earning power of about $1,500 a year. This assignment is entirely without merit." If, therefore, there was no abuse of discretion in refusing to grant a new trial on the ground that the verdict of $27,000 was not excessive, there certainly was no abuse of discretion in the state court granting a new trial on the verdict of $12,000 for the same and identical injury. To say there was no abuse of discretion in the one case, but an abuse in the other, is not only illogical, but an irreconcilable inconsistency. The rule is well established that a presumption exists that a trial court did not err or abuse his discretion in granting or refusing a new trial, and that the burden is upon him complaining of the ruling to show a clear abuse of discretion. *Utah State Nat. Bank* v. *Livingston,* 69 Utah 284, 254 P. 781; *Thomas* v. *Ogden Rapid Transit Co.,* 47 Utah 595, 155 P. 436; *Hirabelli* v. *Daniels,* 44 Utah 88, 138 P. 1172; *White* v. *Union Pac. R. Co.,* 8 Utah 56, 29 P. 1030; *Alt* v. *Chicago & N. W. Ry. Co.,* 5 S. D. 20, 57 N. W. 1126, 1128; *Koch* v. *Imhof,* 315 Pa. 145, 172 A. 672, 673; *O'Barr* v. *Pioneer Life Ins. Co.,* 172 S. C. 72, 172 S. E. 769; 4 C. J. 798. In the case of *Alt* v. *Chicago, etc., Ry. Co.,* supra, that court, in a personal injury case, stated that:

"It requires a court as well as a jury to try causes of this nature, and, while the jury is the judge of the facts viewed in the light of the law, as a rule no verdict should stand when, in the sound judgment

of the trial court, it operates as a wrong between the parties which might be remedied upon a retrial."

I am also of the opinion that the respondent is entitled to prevail as to the other points urged by him. The effect of the granting of the new trial set aside both the verdict and the judgment and placed the case exactly in the position it occupied before there had been a trial, and that ∎ the case in contemplation of law was in the same position as if no previous trial had been had. 20 R. C. L. 313, and cases there cited; 20 Standard Encyo. of Proc., 628; notes 44 L. R. A. (N. S.) 346, and cases.

After the new trial was granted, the plaintiff, in pursuance of R. S. Utah 1933, 104-29-1, subsec. 1, filed a motion and moved a dismissal of the action without prejudice, and upon such motion the action was so dismissed. The statute provides that an action may be dismissed without prejudice "by the plaintiff himself at any time before trial, upon the payment of costs, if a counterclaim has not been made or affirmative relief sought by the answer of the defendant," none of which was here made or filed. It is the contention of the appellant that plaintiff then was without right to dismiss without prejudice and the court without authority to order such a dismissal. If that be true, then the case is still pending in the state district court, in which event the appellant is not entitled to a reinstatement of the judgment vacated by the granting of a new trial. But the plaintiff under the statute had the undoubted right to dismiss the action without prejudice. The only inhibition interposed by the statute preventing him from so doing is when a counterclaim has been made or affirmative relief sought by the answer of the defendant. Neither such was made or sought. The appellant, however, urges that such right entitled the plaintiff to dismiss only "before trial," and that here a previous trial was had. But as shown by the authorities heretofore referred to, the effect of granting the motion for a new trial ipso facto vacated the verdict and judgment and

left the case in the same condition as if no previous trial had been had. In the case of *Phelps* v. *Winona & St. P. R. Co.,* 37 Minn. 485, 35 N. W. 273, 275, 5 Am. St. Rep. 867, the court under a similar statute as that of ours, and where, as here, a voluntary dismissal was taken after the trial court had set aside a verdict and ordered a new trial, said:

"The award of a new trial wipes out the verdict. Setting aside a verdict is as if it had never been, and it cannot be used for any purpose. It is a mistrial, and the plaintiff has the same right to dismiss or discontinue as if no trial had ever been had."

To that effect are the cases of *Gardner* v. *Michigan Central R. Co.,* 150 U. S. 349, 14 S. Ct. 140, 37 L. Ed. 1107, a case on its facts very similar to the instant case; *Goin* v. *Chute,* 126 Or. 466, 260 P. 998, 270 P. 492; *Bleckley* v. *White,* 98 Ga. 594, 25 S. E. 592; *Hayden* v. *Main Central R. Co.,* 118 Me. 442, 108 A. 681.

The case cited and relied on by defendant on this point, *Reagan* v. *Dyrenforth,* 87 Colo. 126, 285 P. 775, when considered in connection with the particular question before the court and the observations made and the conclusion reached with respect thereto, as shown on a careful reading, is not applicable to the facts of the instant case; and even though it should be regarded as applicable, such a ruling as applied to the particular subject under consideration would be against the undoubted weight of authority.

The appellant, however, urges that, as the result of the previous trial, it acquired an interest in and to the judgment and in the action, which, by permitting the plaintiff without the consent of the defendant to dismiss the action and by the commencement of a new action before another court of competent jurisdiction to recover damages for the same injury, deprived the defendant to its prejudice of such interest and right. Such contention is well answered against the appellant in the case of *Williams* v. *Breitung,* 216 Ill. 299, 74 N. E. 1060, 1063, 3 Ann. Cas. 506, where the court said:

" 'It is not regarded as prejudice to the defendant that the complainant dismisses his own bill, simply because the complainant may

file another bill for the same matter.' *Bates* v. *Skidmore*, supra [170 Ill. 233, 48 N. E. 962]. The only prejudice to his own interests which the appellant here insists upon is likely to occur from the dismissal of the bill without prejudice is that another bill may be filed against him for the same matter. If such were the case, there would be no such prejudice to his right under the authorities as to justify this appeal."

As is seen, the statute does not on any such ground, as urged by defendant, forbid a dismissal by the plaintiff of an action without prejudice and without the consent of the defendant. Such a contention on alleged prejudice would prevent a plaintiff "at any time before trial" from dismissing an action without prejudice and without the consent of the defendant. Should the contention of the defendant prevail in case of a previous trial resulting in a judgment in favor of the plaintiff and a new trial granted, then the defendant choosing to claim the result of the trial a victory could prevent the dismissal of the action without prejudice; on the other hand, if he chose to claim the result of the trial a defeat, then the plaintiff would be entitled to dismiss without prejudice; and thus the defendant and not the statute would determine the right of a dismissal without prejudice after a new trial is granted. A dismissal of an action without prejudice and the commencement of a new action on the same claim or demand before another court of competent jurisdiction may or may not result to the advantage of the plaintiff or to the disadvantage of the defendant. But the plaintiff and not the defendant has the choice of forum to which the defendant is amenable both as to subject-matter and person. The right of the plaintiff to have an action for the same claim or demand pending at the same time in two different forums, each of competent jurisdiction of subject-matter and person, may not be doubted. Here, no appeal was taken by the defendant from the dismissal of the action in the state district court until after the judgment was rendered in the federal District Court. Then it was that the defendant chose the judgment in the state district court to

be of binding effect and to have it so declared, notwithstanding the granting of the new trial and a dismissal of the action, in order to wipe out the effect of the judgment in the federal District Court. Had the judgment in the federal District Court been of an amount less than the judgment set aside in the state court, then the defendant, no doubt, would have urged and claimed the judgment in the federal District Court of binding effect, in which event no claim would have been made that the dismissal of the action in the state court was without right, and no appeal would have been taken therefrom. Such but illustrates the proposition that the right of plaintiff to dismiss an action without prejudice when a new trial is granted and a new action commenced before another court of competent jurisdiction, and as to the binding effect of the judgment set aside, is not dependent upon the statute and the law, but upon the will and choice of the defendant. Moreover, whatever prejudice resulted from the judgment rendered in the federal District Court was dissipated by the reversal of the judgment and the granting of a new trial by the Circuit Court of Appeals, on which new trial, if there be one, a judgment may result in an amount less than that set aside by the state court. Thus, the claimed right of prejudice asserted by defendant is more fantastic than real.

This brings us to the further and last point (which could have been considered first), as to whether there was an adverse judgment against the defendant from which an appeal could properly be prosecuted by it. The general rule is well settled that a plaintiff or defendant cannot prosecute an appeal from a judgment or decree in his own favor, and ordinarily cannot appeal from an order or judgment dismissing the complaint, bill or petition, nor from a voluntary dismissal, since the defendant is not aggrieved thereby. 3 C. J. 621, 636; 2 R. C. L. § 36, p. 56; 2 Standard Encyo. of Proc. 194; *Ottenheimer* v. *Mountain States Supply Co.*, 56 Utah 190, 188 P. 1117; *In re Tarnowski*, 191 Wis. 279, 210 N. W. 836, 49 A. L. R. 686. The last expression of this court on

the subject is in the case of *Commercial Block Realty Co.* v. *United States F. & Guar. Co.*, 83 Utah 414, 28 P. (2d) 1081, 1082, wherein the court in considering section 6993, Comp. Laws of Utah 1917, now R. S. Utah 1933, 104-41-4, among other things, said:

"Not only must one be a party to a judgment before he can appeal, but the judgment must be adverse to his interests. In other words, he must be aggrieved or affected by the judgment. Although there are exceptional cases, the general rule is that a party may not appeal from a judgment which is in his favor. Thus a defendant cannot ordinarily appeal from a judgment or decree dismissing a complaint since he is not aggrieved or affected adversely by the judgment of dismissal."

In support of the claim of appealable interest, defendant chiefly relies on the cases of *Hawkins* v. *Nuttallburg Coal & Coke Co.*, 66 W. Va. 415, 66 S. E. 520, and *Hirabelli* v. *Daniels*, 44 Utah 88, 138 P. 1172. A reading of the cases shows neither is here applicable. In the Hawkins Case, an order denying or granting a new trial in that jurisdiction was appealable. In this jurisdiction such an order is not appealable. In the Hawkins Case, there was an appeal from an order granting a new trial. The case there was not dismissed nor put out of court nor the litigation of the action terminated. Here no such appeal may be or was taken. Here, the case was dismissed and by the dismissal the litigation of the action ended and terminated, without any kind of a judgment against the defendant, and as was prayed by it in its answer, that the plaintiff take nothing by his complaint and that it be dismissed.

The Hirabelli Case was one brought to recover damages for an assault and battery. It was tried three times to a jury. The judgment on the first trial on appeal was reversed and a new trial granted. On the second trial, a judgment was rendered in favor of the plaintiff and against the defendant for $35. On motion of the plaintiff and against the objection of the defendant, a new trial was granted. On the third trial, a judgment was rendered in favor of the

plaintiff and against the defendant in the sum of $119 and costs. From that judgment, the last judgment, the defendant prosecuted an appeal. There was not there, as here, a dismissal of the action. There, different from here, was a specific and definite judgment against the defendant in the sum of $119 and costs from which the appeal was taken. Here the appeal is taken from an order of dismissal of the action without a judgment of any kind against the defendant, the action by the dismissal terminated, and the parties left in the same situation as they were before any action was commenced.

But it is asserted by the defendant, since in this jurisdiction no appeal lies from an order granting or refusing a new trial, that, unless the defendant be permitted to appeal from the order dismissing the action, it has no remedy to have reviewed the order of the court granting a new trial to the plaintiff over the objection of the defendant. It is elementary that to review intermediate rulings and orders in a cause there must be a final and a definite and an adverse judgment against the party complaining and from which an appeal may properly be taken. Unless there is such a judgment, there is no right of appeal to review intermediate rulings and orders in the cause. There was such a judgment in the Hirabelli Case and from which the appeal was taken, and hence on such appeal the defendant was in position to have reviewed every alleged and prejudicial ruling and order made against him in the cause and properly preserved by a bill of exceptions. Here, the appeal was not from any such a judgment, but from one, and as stated in *Williams* v. *Breitung,* supra, where the defendant obtained everything that he claimed, that the plaintiff take nothing, and thus the defendant has no adverse or appealable interest entitling it to a review of any intermediate or alleged erroneous rulings in the cause. Passing strange would it be if any other rule should be adopted or followed merely to enable the defendant indirectly to circumvent or render ineffectual the proceedings, or whatever result therein obtained in the federal

District Court of competent jurisdiction both of subject-matter and of person, which the defendant may not and could not accomplish directly. The contentions of the respondent may not easily be dismissed. They go to the very roots of appellate procedure. Under the authorities and in reason,I think they should prevail. To permit an appeal in case of a dismissal of the action and send out of court with no judgment of any kind against the party prosecuting the appeal is but to present a discussion of a mock law case for the sake of practice.

The argument that a dismissal of an action, sending it out of court, is a final judgment, and that under the Constitution all final judgments are appealable, does not meet or dispose of the pertinent questions here involved. The argument overlooks the essential that one may appeal from a judgment, though final, only when it is adverse to him, and as announced by this court in the case of *Commercial Block* v. *United States F. & G. Co.*, supra, and as shown by the texts and cases heretofore cited. As shown by the authorities, the dismissal of the action left the case in the same situation as though no action had been brought against the defendant; left it in a condition without any judgment of any kind against the defendant, much less a judgment adverse to it. In such respect it matters not whether the dismissal was with or without prejudice, for in either event the dismissal sent the case out of court without any kind of a judgment against the defendant. Hence, the cited Hirabelli Case, where there was no dismissal and where the appeal was taken by the defendant from a final judgment against him for a definite and specific sum of money and costs, has here no application. Here there is no such judgment from which the appeal is taken. In the Hirabelli Case, the appeal, being from a definite and specific judgment against the defendant, presented for review all alleged prejudicial and intermediate rulings in the case, including the granting or refusing to grant a new trial properly preserved by a bill of exceptions. But an attempted appeal as here

from a judgment, though final, but not adverse to the appellant, does not present any intermediate ruling for review; and presents nothing but moot practice.

The argument further overlooks the proposition that a dismissal of an action without prejudice, taking nothing against the defendant, is not, and as shown by the authorities heretofore referred to, prejudicial to the defendant because the plaintiff may commence a new action on the same matter. It further overlooks the proposition, and also as shown by the authorities, that the granting of a new trial wiped out the verdict and set it aside as though it had never been, and that the plaintiff had the same right to dismiss or discontinue the action as though no trial had ever been had, and in such particular, and as shown by the authorities, it matters not whether the new trial was granted on an appeal or by the trial court itself.

There is a motion to dismiss the appeal on the ground that the defendant, for the reasons heretofore stated, had no appealable interest. But aside from the motion, jurisdiction of this court must appear on the record. *State ex rel. Snell* v. *Third Dist. Court,* 36 Utah 267, 103 P. 261. It may not be waived. *Davidson* v. *Munsey,* 27 Utah 87, 74 P. 431. This court will, sua sponte (*Hardy* v. *Meadows,* 71 Utah 255, 264 P. 968), determine its own jurisdiction, though not challenged (*Farmers' Cash Union* v. *Elswood,* 67 Utah 501, 248 P. 477), and will notice want of jurisdiction whether the parties raise the question or not (*McCashland* v. *Keogh,* 32 Utah 11, 88 P. 680), and for want of jurisdiction will dismiss an appeal on its own motion (*Logan City* v. *Blotter,* 75 Utah 272, 284 P. 333).

From what has been said, of course, it follows that the appeal should be dismissed, which necessarily leads to an affirmance of the dismissal of the action in the court below. We also are of the opinion that the court below, for the reasons hereinbefore stated, did not err in granting the motion for a new trial, nor on plaintiff's motion in dismissing the action without prejudice, which holdings, if followed

by this court, also lead to an affirmance of the dismissal of the action in the court below. Thus, the order or judgment appealed from is affirmed, with costs to the respondent.

WOLFE, Justice (concurring in part, dissenting in part).

In this case the defendant admitted liability. The sole question was the amount of damages. This was the issue put to the jury. Any error, therefore, in guiding the jury in its ascertainment of damages would be highly prejudicial and apt to do great injustice one way or the other. Leaving that for the moment to consider the question of appellant's right to a review of the court's ruling in setting aside the verdict of $12,000, we find that respondent, in effect, says:

"Your right to review the correctness of an order setting aside a verdict is a right which is embedded in the action. When the action is gone, the right is gone. As long as the action is extant you may reserve by wayside bill of exceptions the right to review the court's ruling; but when the action is out of court your right, as incidental to the action, is gone. The action is out of court by my dismissing without prejudice. Therefore, the matter of the court's ruling in setting aside the verdict is no longer litigable. Since it was error in that action, if error at all, the suit being ended the error is moot."

The appellant says:

"Granted, for the sake of the argument, that after a setting aside of the verdict you had the right to dismiss on the theory that the setting aside of the verdict gave you full control of your own suit in the absence of a counterclaim, the same as if no verdict had ever been rendered; still, we had a satisfactory judgment which was set aside. If there was error in setting it aside, we have been aggrieved in two respects. It has done away with a judgment which was a jury's finding of the extent of our liability and which would have ended all further bother of litigation Secondly, on your own theory, it served to leave open the way for a dismissal of the action by you which you could not otherwise have done. In short, the court's error, if it was error, not only set aside a judgment which was satisfactory to us but, if you are correct, made it impossible for us to appeal to determine whether there was error because it permitted you to dismiss the suit, and, according to your theory, made it impossible for us to review the ruling. It, therefore, must result that, granted you have the right

to dismiss, then this suit was given finality. The judgment of dismissal was a final judgment. From that point we have the right to have reviewed the ruling of the court which was prejudicial to us. Had the suit not been dismissed, we by wayside bill of exceptions would have had that right. If we had the right to have the judgment remain, the ruling of the court setting it aside prejudiced us. Certainly, we have the right to have the court's ruling reviewed."

I believe the appellant's position in this regard well taken. A finding by the jury ended litigation and fixed liability, making it certain. If the court was in error in setting it aside, the court's action denied them a right which they had. There must be some way to test out the correctness of the court's action. The opinion of Mr. Justice EPHRAIM HANSON holds that a dismissal gave the appellant what it prayed for, to wit, a dismissal; that the judgment of dismissal was favorable and not adverse, and that, therefore, there was no right of appeal. But the answer of the appellant admits liability under the Federal Employers' Liability Act (45 U. S. C. A. §§ 51-59), in that it admitted a failure of its appliances. Therefore, it expected to get some judgment against it. It considered $12,000 satisfactory. If, through an error of the court, it was denied the fixity and certainty of this judgment, why would not a dismissal of this suit, which destroyed all chances to have its suit reviewed by a wayside bill of exceptions, be adverse? Granted that respondent had the right to dismiss the action, an appeal from the point of that dismissal on the court's ruling setting aside the verdict was the appellant's last and only opportunity to have reviewed such ruling of the court which, if erroneous, would certainly have prejudiced the appellant. If appellant had the right to have reviewed the action of the trial court in setting aside the verdict, then such right cannot be taken away by the dismissal of the suit. I think the plaintiff after the verdict was set aside had the right to dismiss his action without prejudice, whatsoever his motive, but I further think that a judgment of dismissal immediately set running the time

and the opportunity for the defendant to appeal from the ruling of the court setting aside the verdict.

When it comes to the matter of determining whether the trial court was correct in setting aside the verdict, I agree with the opinion of Mr. Justice EPHRAIM HANSON. I have serious doubts as to whether the instruction complained of was correct, especially in the light of the federal decisions, comments in respect to which have been made in the other opinions filed in this case. The learned and careful trial judge was in a difficult position. As far as the record shows, no evidence showing the rate of return on investments which were safe for the ordinary prudent man, unlearned in investment technique, was introduced. No tables from which the present values of an anticipated reduction in earnings could be figured were introduced. Very few jurymen, indeed, would have been competent even to take the legal rate and figure the present value of anticipated dollars over a period of 33 years without tables to aid them. The federal cases seem to hold that the jurors should arrive at the present value of these anticipations on *evidence introduced* of the rate of return which capital safely invested might expect. There were only three possible things which the court could do; the case had to be withheld from the jury because of lack of sufficient evidence, as it was held in the case of *Southern Pac. Co.* v. *Gastelum,* 38 Ariz. 127, 297 P. 875, should be done where there was no evidence of the present worth of future pecuniary earnings, or it could do what it did do, instruct the jury that they could, but were not required to, use the legal rate, or it could put the case to the jury without any instruction as to the figure which might be used to make the computation. These were the only three methods of procedure which the court could follow under the circumstances. In giving the instruction it did, the court must have assumed that the matter of the rate of return for safe investments of capital to an ordinary person unschooled in making investments was something that was in the ordinary experience and knowledge of the

jury. If it had not so assumed, the jury would not have had any other rates from which to make a choice, and a choice was necessarily implied in the instruction.

As a matter of fact, it is impossible to tell whether the $12,000 verdict reflects any rate. What elements the jury took into consideration, no one will know. They may have given so much for pain and suffering and the rest upon the theory that the plaintiff was not totally incapacitated. Certainly, if they came to the conclusion that his entire earning power was destroyed, even at 8 per cent the verdict was too small. (See hereunder.) Judging from the federal decisions, the court should have called for evidence on the rates of return which a safe investment of capital could expect. In the absence of response, had the court permitted the case to go to the jury, it would have been better to have not mentioned any rate. The plaintiff, at least, not having furnished evidence, could not then complain. In such case it may be that the jury could be permitted to pass only on other elements of damage in regard to which there was a complete chain of evidence, such as pain and suffering. That element of damage which depends upon ascertaining the present worth of future pecuniary earnings being supported by evidence in which there was an important link missing might have to be withheld from the jury. It is, however, not necessary to decide that question. I think the court made no error in setting aside the verdict. The instruction given under any version was erroneous and highly prejudicial.

I also think it was not a clear abuse of discretion to set aside the verdict as inadequate. At $1,800 a year for 33 years, even at 8 per cent, the present value of future earnings would be $20,292.37; at $1,500 a year it would be $17,-250. Of course, this presupposes a total loss of earning power. The jury may have believed that the plaintiff could have earned something. But the jury certainly was not equipped to apply to the problem of arriving at a fair sum all the help which it should have had at its command. Had it had these in its possession and then found a verdict of

$12,000, the trial court might have been more assured that it had given consideration to all factors. As it was, there is no such assurance. I cannot say that the court under the circumstances abused its discretion in setting aside the verdict if it did so on the ground that it was inadequate. The ruling setting aside the verdict does not say upon which ground it set it aside.

No error having been committed in setting aside the verdict, it follows that the defendant was not aggrieved. I concur in the results reached by the opinion of Mr. Justice EPHRAIM HANSON.

FOLLAND, Justice (concurring in part, dissenting in part).

I concur in holding that defendant had the right to appeal from the final judgment of dismissal. In this state there is no appeal from an order granting or refusing to grant a new trial, because such an order is not a final order or judgment; and appeals lie only from final orders, judgments, or decrees. However, on appeal from a final judgment in a cause, a ruling by the court granting a new trial, if the proceedings respecting it are properly preserved in a bill, may be reviewed by this court. That question is settled in this jurisdiction. *Hirabelli* v. *Daniels*, 44 Utah 88, 138 P. 1172; *Perrin* v. *Union Pac. R. Co.*, 59 Utah 1, 201 P. 405. In the instant case, the court's order granting a new trial and the exception thereto were properly preserved in a bill of exceptions. No review could be had of such ruling until after final judgment and appeal therefrom. I am not much concerned with the mechanics of the dismissal, because when the judgment of dismissal was entered there was then a final judgment in the case from which an appeal might be taken. I think the plaintiff, after trial, verdict, and order granting a new trial, cannot by a dismissal of the case deprive the defendant of the right of review on appeal.

The question remains whether defendant is such a party as has a right of appeal from the final judgment. The Constitution of Utah provides, article 8, § 9:

"From all final judgments of the district courts, there shall be a right of appeal to the Supreme Court."

R. S. Utah 1933, 104-41-4 (Comp. Laws Utah 1917, § 6993) provides:

"Any party to a judgment or decree may appeal therefrom."

There is no provision in either our Constitution or statutes which limits the right of appeal to the party "aggrieved" or "party prejudiced" by the judgment or some part thereof such as found in the statutory provisions of many of the states. 3 C. J. 619, 629; 2 R. C. L. 49-52. In view of our statute, I believe it illogical to say that the question as to whether or not the right of appeal exists will depend on whether the appellate court shall find, after a review of the record, that prejudicial error was committed against appellant. When an appeal from the final judgment is properly perfected, the cause is before this court for review of such alleged errors as are indicated by the assignment of errors.

I do not, by anything I have said, desire to encourage frivolus appeals. The defendant here had an appealable interest in the verdict of the jury and could claim to be aggrieved by the order granting a new trial. It was satisfied with the verdict rendered against it and was interested in putting an end to the litigation. By the order granting a new trial, defendant was subjected to a continuation of the litigation and the risk of a larger judgment on another trial, and was, therefore, affected in its substantial rights by the order. The motion to dismiss the appeal should be denied.

On the merits of the cause, I am of the opinion the trial court did not abuse its discretion in granting a new trial because I believe the instruction given by the trial court, that the jury may use the legal rate of interest, that is 8 per

cent, in making their calculations as to the present worth of money, to be erroneous. I concur in the results reached on that question by Mr. Justice EPHRAIM HANSON, but cannot agree with the reasoning and argument in support of his conclusion. I cannot find that the identical question before us was involved, considered, and decided in the case of *Southern Pacific Co.* v. *Klinge* (C. C. A.) 65 F. (2d) 85, 87, or in the cited cases from the Supreme Court of the United States. The opinion seems not to take into consideration the distinguishing fact that in this case no evidence was introduced by either party respecting rates of interest which might be earned on money prudently invested. The question here is whether, when no evidence on that issue is before the jury, the court is authorized to instruct that the jury may use the legal rate in their computation.

Since this case arises under the Federal Employers' Liability Act (45 U. S. C. A. §§ 51-59), we are certainly bound to follow the decisions of the federal courts with respect to the measure of damages. *St. Louis-San Francisco R. Co.* v. *Floyd,* 146 Okl. 42, 293 P. 250, 77 A. L. R. 1439. While no federal decision squarely decides that an instruction such as here complained of is erroneous, I am convinced that such an instruction is not in harmony with the views announced in the federal cases, and therefore could not be approved. The federal rule is well stated in *Southern Pac. Co.* v. *Klinge,* supra, as follows:

"The jury should determine from the evidence what interest could be fairly expected from safe investments which a person of ordinary prudence, but without particular financial experience or skill, could make in that locality."

That is, where there is evidence on the subject, the jury must be left to determine the rate of interest to be used in the computation without instruction from or comment by the court as to any specific interest rate. Does the rule apply, when no evidence has been introduced, that the jury be left to determine the fact from their own experience, or

is it permissible on such a record for the court to instruct the jury it may use the legal rate? That is the question before us, and it has not been decided by any federal case so far as I am informed. Inferentially, at least, I believe the federal decisions condemn the practice of the court instructing as to any rate of interest except possibly for purposes of illustration as to how to use a formula for arriving at present worth of future benefits. *Coast S. S. Co.* v. *Brady* (C. C. A.) 8 F. (2d) 16, 19. Quotations from the Supreme Court decisions in *Chesapeake & O. R. Co.* v. *Kelly*, 241 U. S. 485, 36 S. Ct. 630, 60 L. Ed. 1117, L. R. A. 1917F, 367, and *Gulf, C. & S. F. R. Co.* v. *Moser*, 275 U. S. 133, 48 S. Ct. 49, 72 L. Ed. 200, may be found in the opinions of my associates and need not be included here. I find nothing in either of them lending approval of an instruction calling attention to the legal rate of interest. The inferences are to the contrary. Two other Supreme Court decisions might well be considered: In *Louisville & Nashville R. Co.* v. *Holloway*, 246 U. S. 525, 38 S. Ct. 379, 381, 62 L. Ed. 867, the railroad company requested an instruction that the verdict could not exceed a sum which would yield at 6 per cent interest (the legal rate), a sum which would represent the proven pecuniary benefits, and that the period over which computed could not exceed the deceased's expectancy of life. The court held defendant was entitled to an instruction that, in estimating what amount would compensate the widow, future benefits must be considered at their present value; but said: "The company was not entitled to have the jury instructed as matter of law either that money was worth that rate, or that the deceased would not in any event have outlived his probable expectancy." While this case is not at all a decision of the question before us, it is in harmony with other rulings that, notwithstanding evidence of mortality tables, it was for the jury to determine without aid of instructions the interest rate applicable and the probable expectancy of life. See *Lowe* v. *Chicago, St. P., M. & O. Ry. Co.*, 89 Iowa, 420, 56 N. W. 519.

In *Western & A. R. R.* v. *Hughes,* 278 U. S. 496, 49 S. Ct. 231, 232, 73 L. Ed. 473, the court approved an instruction given by the trial court by saying there was "no room for a contention that the charge failed to state correctly the applicable rule." Not anything is shown or decided regarding any particular rate of interest, and the objection urged to the instruction was merely that it should have gone further and included the element of ordinary care in the making of investments. It does not appear whether or not there was evidence before the jury respecting rates of interest. The instruction thus approved is found in *Western & A. R. R.* v. *Hughes,* 37 Ga. App. 771, 142 S. E. 185, 188. The trial court charged the jury that in making a reduction to represent the present cash valuation of damages for future benefits, the jury should make adequate allowance according to circumstances for the earning power of money, and that it should "be reduced to its present cash value upon a rate of interest which *you fix as reasonable, just, and right under all the circumstances.*" This, then, is an approved instruction irrespective of whether evidence of interest rates was introduced.

Several state court decisions are cited and relied on by appellant in support of the challenged instruction. These cases must be disregarded as not decisive or even persuasive, for the reasons indicated below. In *St. Louis-San Francisco R. Co.* v. *Floyd,* 146 Okl. 42, 293 P. 250, 254, 77 A. L. R. 1431, the jury was instructed to make its "calculations on the basis of the amount of their award bearing interest at the rate of 6 per cent per annum." In *Bunch* v. *McLeskey,* 173 Ga. 545, 161 S. E. 128, and *Bunch* v. *McLeskey,* 44 Ga. App. 268, 161 S. E. 382, an automobile accident case, the approved instruction was that the jury should be instructed to use the 7 per cent rate of interest. In *Western & A. R. R.* v. *Bennett,* 47 Ga. App. 629, 171 S. E. 187, the charge that the jury should use the rate of 7 per cent per annum in its computation was held not erroneous. In *Southern Pac. Co.* v. *Gastelum,* 38 Ariz. 127, 297 P. 875, the judgment was reversed

because of failure of the trial court to give a requested instruction with respect to the present value of future benefits. The instruction included the 6 per cent rate as a part of the illustration of computing present worth. No point was made, however, with respect to the use of such rate of interest as an example, although the court suggested that under the federal rule it was necessary, in order to support a verdict awarding damages, for the future loss of wages for plaintiff to prove the present worth of future pecuniary earnings. The case is not authority for an instruction that the jury may use the legal rate of interest. In *Western & A. R. R.* v. *Gray*, 172 Ga. 286, 157 S. E. 482, the legal rate of interest is mentioned, but the use of such rate was not challenged or passed on. These cases are clearly inconsistent with the federal decisions. In *Coast S. S. Co.* v. *Brady*, supra, by a federal court, the reference in the charge to 8 per cent interest was approved because "the charge is to be construed as merely explaining the method of ascertaining the present value of money payable in the future, and as committing to the discretion of the jury such use of the annuity table as they might consider proper in connection with all the other evidence in the case relating to the impairment of earning capacity." *Aetna Life Ins. Co.* v. *Geher* (C. C. A.) 50 F. (2d) 657, holds merely that the present worth of endowment insurance policies repudiated by the insurer before maturity should be computed on the basis of simple interest at the legal rate. This is a contract case and within the statute. It does not aid here.

On the other hand, in *Western & A. R. R.* v. *Lochridge*, 170 Ga. 208, 152 S. E. 474, the general instruction that the jury should determine the present cash value of future benefits by making due allowance for the earning power of money under the circumstances, was approved, notwithstanding there was no evidence in the record as to the capacity of the plaintiff for investing and caring for money nor as to interest rates in the locality where it might be invested.

In the same case before the Court of Appeals (39 Ga. App. 246, 146 S. E. 776, 782), the court said:

"Interest rates and other forms of returns on money safely invested are matters of such common knowledge that intelligent jurors may be presumed to be able to make proper allowance therefor in estimating the present value of a sum of money payable in the future, though no evidence upon that subject is introduced."

A proper method of treating the problem is that stated in *Chesapeake & O. N. R. Co.* v. *Adams*, 207 Ky. 668, 269 S. W. 1009, 1011, as follows:

"Jury trials must in the nature of things be conducted along practical lines, and we believe the better rule to be for the parties, if they so desire, to introduce evidence to show what, under the varying conditions of the evidence, the present value of the expected pecuniary benefits may be, and then leave it to the jury to determine from this evidence what such present value is. In the absence of such evidence, the jury, knowing as men of common sense that a present value of a future fixed sum is a discounted value, must be trusted, as they are trusted in many other respects, to ascertain in their own way what this discounted value is."

See, also, *Walker* v. *Missouri P. R. Co.*, 210 Mo. App. 592, 243 S. W. 261.

The Circuit Court of Appeals in *Southern Pac. Co.* v. *Klinge*, supra, held the trial court clearly right in refusing to give the requested charge that the jury may, but is not required to, use the legal rate of 8 per cent in its computation, and added: "Whether the statutory rate on judgments is even evidentiary might be questionable, but certainly it is not conclusive." In a case of this kind, the jury is not required to fix damages for the loan or forbearance of money where contracts are involved, or to determine the amount of interest or damages that should be paid for withholding of money, or of property as in cases of replevin, or to fix the rate of interest that judgments should bear. The question is quite a different one; namely, what interest could be fairly expected from safe investments made by persons of ordinary prudence but without particular financial experience or skill. I am unable to see any evidentiary value

in the legal rate of interest as such where that is the question. The doubt expressed by the Circuit Court of Appeals as to whether the legal rate could properly be received in evidence is undoubtedly based upon some such considerations as these, and I believe the doubt well founded.

Where there is evidence as to rates of interest, it would be an unauthorized comment on evidence for the court to single out the legal rate and instruct respecting it. The vice would be even greater for the court to supply evidence where there was none, by instructing that the jury may use the legal rate of 8 per cent in their computation. While the language is permissive, it seems to me to be almost equivalent to an instruction that they should use that rate. Such an instruction would certainly be improper.

The holding that the court may not supply, by suggestion to the jury of the legal rate of interest for its use where neither party has offered evidence on the subject, does not at all mean that the burden of proof is shifted to the defendant. The burden of proof remains with the plaintiff at all times, and if he fails to sustain such burden on any such issue he must fail in his recovery. If defendant thinks it can minimize damages by introducing evidence showing what money can earn, it is of course at liberty to do so. Believing, as I do, that an instruction directing attention to the legal rate of interest of 8 per cent, whether permissive or mandatory language is used, does not harmonize with the federal rule and is erroneous, I think the trial court was within its discretion in granting a new trial. It is, therefore, unnecessary for me to say anything with respect to the other point urged; that is, the adequacy or inadequacy of the verdict. I am not at all concerned about whether plaintiff will secure more or less upon another trial. It may be assumed that each party will have opportunity to present evidence supporting his contentions, and that after a fair trial a proper verdict will be rendered.

A new trial having been properly granted by the trial court, there being no counterclaim on file, and the defendant

having no vested right in the verdict, the judgment of dismissal without prejudice by the court on plaintiff's motion should be affirmed. I therefore concur in the results reached by Mr. Justice EPHRAIM HANSON.

HARRIS, District Judge (dissenting).

Plaintiff brought an action against the defendant to recover $100,000 damages for loss of his right arm resulting from an accident occurring October 10, 1930, while he was employed as a brakeman on one of defendant's freight trains near Timber in the state of Oregon. It was admitted by the defendant that the accident happened as a result of a handle on a freight car giving way so that plaintiff fell under the moving car and his arm was run over necessitating its amputation five and one-half inches below the shoulder; that the plaintiff was at the time engaged in interstate commerce; and that under the Federal Safety Appliance Act (45 U. S. C. A. § 1 et seq.) defendant was liable and it was stipulated that the only issue for trial and determination by the jury was the amount of plaintiff's damages. The jury returned a verdict in favor of the plaintiff for $12,000, for which amount judgment was duly entered.

Plaintiff moved for a new trial, which motion was resisted by the defendant, and on February 15, 1932, an order was made granting the motion. Thereafter, upon plaintiff's motion without notice to the defendant, the district court entered a judgment dismissing the action. Defendant duly excepted to the ruling of the court and preserved its wayside bill of exceptions preserving the record on the trial and the order granting the motion for a new trial. This is an appeal from the judgment dismissing the case with separate bills of exceptions preserving the record before and after the granting of the motion for a new trial.

Plaintiff moved to dismiss the appeal and strenuously urges that no appeal lies to the Supreme Court from a judgment of dismissal because such a judgment is in favor of the defendant, and that plaintiff has an absolute right to dis-

miss his action, and that appellant could not be and was not prejudiced thereby and has no right to appeal therefrom. Plaintiff relies on R. S. Utah 1933, 104-29-1, which provides that an action may be dismissed or a judgment of nonsuit entered in the following cases: "(1) By the plaintiff himself at any time before trial, upon the payment of costs, if a counterclaim has not been made or affirmative relief sought by the answer of the defendant."

And he cites the case of *McCready* v. *Rio Grande W. Ry. Co.*, 30 Utah 1, 83 P. 331, 8 Ann. Cas. 732, which held that a railroad had a right as a matter of course to dismiss a condemnation proceeding during a selection of the jury. Also, *Sierra Nevada Mill Co.* v. *Keith-O'Brien Co.*, 48 Utah 12, 156 P. 943, and *Ottenheimer* v. *Mountain States Supply Co.*, 56 Utah 190, 188 P. 1117, holding that a party may not appeal from a judgment in his favor which he has accepted or acquiesced in and satisfied. The facts in the above cases are in no way similar to the facts in this case, and they have no application here.

The appellant could not appeal directly from the order granting the motion for a new trial for the reason that such an order was not a final judgment. That has been settled by this court in *Lukich* v. *Utah Construction Co.*, 46 Utah 317, 150 P. 298, and *Candland* v. *Mellen*, 46 Utah 519, 151 P. 341. It is likewise settled, however, that a judgment of dismissal does constitute a final judgment from which an appeal will lie. *Continental Life Ins. & Inv. Co.* v. *Jones*, 31 Utah 403, 88 P. 229; *Lukich* v. *Utah Construction Co.*, 48 Utah 452, 160 P. 270. And the very procedure here adopted for reviewing an order granting a motion for a new trial has been approved by this court. *Hirabelli* v. *Daniels*, 44 Utah 88, 138 P. 1172, 1173; *Perrin* v. *Union Pac. R. Co.*, 59 Utah 1, 201 P. 405.

I quote from the Hirabelli Case above, Justice Straup speaking for the court:

"Our statute and Constitution permit an appeal from only a final judgment. Because of them it has repeatedly been held that an order granting or refusing a new trial is not appealable; such an order being not a final judment. It, however, is just as well settled that on an appeal from the final judgment an order or ruling refusing a motion for a new trial, when the proceedings respecting it are properly preserved and presented by a bill, is reviewable under the provisions of the statute (Comp. Laws 1907, § 3304) that 'upon an appeal from a judgment, all orders, rulings, and decisions in the action or proceeding to which exceptions have been taken in the court below, or which are deemed excepted to as provided by this Code, are before the Supreme Court for review.' It has not as yet been decided that an order or ruling granting a new trial is reviewable on an appeal from the final judgment. If such a ruling is not reviewable on such an appeal, it necessarily follows it is not reviewable at all."

Again:

"And since it [the order granting the motion for a new trial] is properly preserved and presented by a bill, we think it is before us for review on appeal from the final judgment. A contrary holding leads to this: No matter how often, or how whimsical or baseless the ground may be on which the trial court may set a verdict aside and grant a new trial, nevertheless, an aggrieved party will be compelled to accept what the court may choose to allow or impose upon him or abandon his cause or defense; for, no matter how often a case may be tried, the trial court, for mere capricious notions that the verdict is too large or too small may set it aside until a jury is found to respond to the court's notions of what the verdict and damages should be; and if, perchance, the proceedings on the last trial are without error, neither party can complain. Surely the statute does not contemplate no relief may be granted from such a prostitution of the constitutional trial by jury."

In *Jensen* v. *Denver & R. G. R. Co.*, 44 Utah 100, 138 P. 1185, 1192, it is said:

"A ruling granting or refusing a motion for a new trial is certainly reviewable when the proceedings with respect to it are properly preserved and presented. That has not been questioned. Of course the ruling will not be disturbed on evidence in conflict, or on matters involving discretion. Yet our power to correct a plain abuse of discretion or undo a mere capricious or arbitrary exercise of power cannot be doubted."

In this case, if this appeal is dismissed, the defendant is precluded from a ruling on the order of the court granting the motion for a new trial. It would seem almost a waste of time to discuss the argument that the judgment of dismissal is necessarily a judgment in favor of the defendant. The judgment of dismissal was "without prejudice," and it appears that immediately thereafter this plaintiff commenced a new action in the United States District Court here where a verdict and judgment were obtained for $27,000. Upon appeal to the Circuit Court of Appeals, this verdict was set aside and a new trial ordered. 65 F. (2d) 85.

In this case the defendant admitted liability. It may be that it was willing before the trial to admit liability in the exact sum of $12,000, so that while the judgment was against the defendant they contend it was in fact in their favor because the dispute was between the $12,000 and the claimed $100,000. The trouble then with the argument that the order granting the new trial and dismissing the action is in defendant's favor, is that such order was without prejudice and it deprived the defendant of its claimed victory in the first suit. The defendant, being satisfied with the verdict and judgment, could not, by the method here attempted, be deprived of its right to an appeal from the order setting it aside over its objection.

The case of *Hawkins* v. *Nuttallburg C. & C. Co.*, 66 W. Va. 415, 66 S. E. 520, is a case almost in point on every feature to this case. That was an action for death. The jury returned a verdict of $500, and the trial court granted the motion for a new trial, over defendant's objection. When the case reached the appellate court, the plaintiff objected that the defendant had no right to review the judgment granting a new trial because it was in favor of defendant. The court said that even though a judgment is in favor of a party he may seek a reversal of the judgment where it does not afford all the relief claimed; that the defendant had a

right to claim finality by the trial where there was no error in the record. Upon examining the record, the court found no error, and held that the trial court therefore abused his discretion in granting the new trial, and the appellate court reinstated the first judgment. A majority of the court, as I understand it, are therefore of the opinion that there is no merit to plaintiff's motion to dismiss the appeal, and that therefore the motion to dismiss the appeal is denied.

On the merits of the appeal, I dissent from the result reached by a majority of the court. On this appeal it is our duty to examine the record to determine whether or not there was an abuse of discretion on the part of the trial court in granting the motion for a new trial. There is no substantial dispute in the evidence in the case which eliminates the consideration of the matter of the trial court's discretion where there is such a dispute in the evidence, or as to the credibility of witnesses. The motion for a new trial assigned as ground therefor, errors at law occurring at the trial, and that the verdict was inadequate and against the law.

The rule seems to be fairly well established in this state that a verdict of a jury in a damage case may not be disturbed unless the damages are so excessive or so small as to fairly create the impression that the jury had plainly misinterpreted the law or the facts in such a manner "as to shock one's conscience and to clearly indicate passion, prejudice or corruption on the part of the jury." *Morgan* v. *Ogden Union Ry. & Depot Co.*, 77 Utah 325, 294 P. 541; *McAfee* v. *Ogden Union Ry. & Depot Co.*, 62 Utah 115, 218 P. 98; *Jensen* v. *Denver & R. G. Ry. Co.*, supra. In the last-named case, the court, speaking of the right of the court to grant a new trial because the verdict for damages was excessive, says:

"Neither is either party on that question entitled to the judgment of the court below in a case of tort tried to a jury. Both parties, as to that, are entitled to the unprejudiced judgment of the jury. That is exclusively within their province. Their power and dis-

cretion, when properly exercised and when they have been properly directed as to the measure of damages and the mode of assessing it, may not be interfered with merely because the court above or below may think the amount rendered is too large, or even may think it appears to be larger than the evidence apparently or fairly justifies. A court, vacating a verdict and granting a new trial by merely setting up his opinion or judgment against that of the jury, but usurps judicial power and prostitutes the constitutional trial by jury."

The case of *Chesapeake & O. R. Co.* v. *Arrington,* 126 Va. 194, 101 S. E. 415, 423, is a case of much interest here, where the plaintiff lost an arm, and where the court says:

"The law wisely leaves the assessment of damages, as a rule, to juries, with the concession that there are no scales in which to weigh human suffering, and no measure by which pecuniary compensation for personal injuries can be accurately ascertained."

The court in this case also suggests that, where a verdict is attacked as unusual, it is proper to make a comparison with other verdicts which other juries have found for similar injuries, and calls attention to the fact that from a long list of cases cited in 17 C. J. 1102, in 9 cases for loss of an entire arm, from $6,000 to $25,000, averaging $16,277, were all held excessive, while in 26 cases above $10,000, averaging $13,000, the verdicts were held to be not excessive. No cases holding a verdict for loss of an arm inadequate appear in the note. Apparently, cases where the complaint is that a verdict is inadequate arise much less frequently; but we see no reason why the comparison here referred to may not be made whether the complaint is that the verdict is inadequate or excessive.

Counsel for appellant furnish in their brief a tabulation of 88 cases for loss of an arm, where verdicts have ranged from $5,000 to $32,500, where it appears that the greater number of these verdicts are below $12,000 with the average for the 88 cases being $9,571. We might note here, without expressing an opinion as to what, if any, weight should be given to the matter, that our State Workmen's Compensa-

tion Act, R. S. Utah 1933, 42-1-62, fixes a maximum of 200 weeks at $16 per week for loss of an arm at or near the shoulder.

In this case the plaintiff was 33 years of age with a stipulated life expectancy of 33.2 years. His average earnings for the 10-year period prior to the accident were approximately $150 to $175 per month. He usually laid off about two months in the wintertime. The loss of his arm disqualified him from work as a carpenter or as a brakeman, in which occupations he had been engaged for many years.

It would appear from the above that this verdict is well up among the average verdicts in similar cases, and we can find no basis for the trial court to conclude that the verdict was so inadequate as to shock one's conscience or indicate any passion or prejudice on the part of the jury against the plaintiff, and, therefore, no authority or reason that would justify the trial court in granting a new trial on the ground the verdict was inadequate. A very recent case holding that a verdict of the jury should only be set aside where it is manifest from the evidence and rulings that it is not a fair and just verdict, is *Shelton* v. *Underwood* (Miss. 1935) 163 So. 828.

The other remaining point that divides counsel here is that the trial court erred in giving the instruction set out in full in the prevailing opinion. Plaintiff excepted to this instruction and particularly that 8 per cent is not a proper basis of computation. Both sides cite the cases of *Chesapeake & O. R. Co.* v. *Kelly, Adm'x,* 241 U. S. 485, 36 S. Ct. 630, 60 L. Ed. 1117, 1124, L. R. A. 1917F, 367, and *Gulf, C. & S. F. Ry. Co.* v. *Moser, Adm'x,* 275 U. S. 133, 48 S. Ct. 49, 50, 72 L. Ed. 200, and each claims these cases determine the controversy as to the propriety of the above-mentioned instruction in their favor. The Chesapeake & O. R. Case, first cited, was a case in which plaintiff recovered a verdict of $19,011 for the death of her husband under the Federal Employers' Liability Act (45 U. S. C. A. §§ 51-59). The defen-

dant requested an instruction to the jury that the measure of damages represents the present cash value of the reasonable expectation of the earnings and contributions of deceased to the plaintiff. The trial court refused the instruction, and the Court of Appeals (160 Ky. 296, 169 S. W. 736) affirmed the judgment, apparently upon the theory the matter was too complicated and the ordinary jury were not competent to figure present worth. The Supreme Court of the United States reversed the case, holding that, where future earnings are to be anticipated and capitalized in a verdict, plaintiff is entitled to no more than their present worth, and it was error to refuse to so instruct the jury. The Supreme Court was not called upon to pass on what rate of interest was proper to consider in figuring present worth, and in that connection used the following language:

"We do not mean to say that the discount should be at what is commonly called the 'legal rate' of interest; that is, the rate limited by law, beyond which interest is prohibited. It may be that such rates are not obtainable upon investments on safe securities, at least, without the exercise of financial experience and skill in the administration of the fund; and it is evident that the compensation should be awarded upon a basis that does not call upon the beneficiaries to exercise such skill, for where this is necessarily employed, the interest return is in part earned by the investor rather than by the investment."

In the Gulf, C. & S. F. Ry. Case, supra, the Supreme Court again held that it was reversible error to refuse a requested instruction that, in determining the present value of such contributions as plaintiff probably would have received from the continued life of the deceased,

"you will make your calculations on the basis of the amount of your award, bearing interest at the highest net rate of interest that the testimony shows can be had on money safely invested, and secured."

Referring to the *Chesapeake & O. R. Co.* v. *Kelly Case,* supra, the court says in that case:

"We distinctly stated that: 'In computing the damages recoverable for the deprivation of future benefits, the principle of limiting the

recovery to compensation requires that adequate allowance be made, according to circumstances, for the earning power of money; in short, that when future payments or other pecuniary benefits are to be anticipated, the verdict should be made up on the basis of their present value only.' The interpretation approved by us has become an integral part of the statute. It should be accepted and followed."

Respondent contends, and the majority of this court apparently adopts the construction, that the instruction given in this case is in "direct conflict" with the above cases, and particularly the portions last quoted. With this contention I cannot agree. There is nothing in the above that condemns the instruction given in this case. Those cases squarely established the rule that the damages allowed by the federal statute should be fixed on the present cash value. As I read them, they do not undertake to lay down any formula for calculating such present value or fix the rate of interest that should be used, because those questions were not before the court. They do appear to indicate that it would be proper to show that the legal rate of interest could not be obtained on safe investments, and, when that appeared, then the rate should be adopted which will make *adequate allowance,* according to the circumstances, for the earning power of money. There was no showing that 8 per cent could not be had on safe investments in this case.

Appellant cites a number of cases holding that the legal rate of interest is a proper rate to consider in such matters when there is no showing that money could not be safely invested at such rate. We list some of the more recent cases: *Western & A. R. R.* v. *Gray,* 172 Ga. 286, 157 S. E. 482; *St. Louis-San Francisco R. Co.* v. *Floyd,* 146 Okl. 42, 293 P. 250, 77 A. L. R. 1431; *Southern P. Co.* v. *Gastelum,* 38 Ariz. 127, 297 P. 875; *Western & A. R. R.* v. *Bennett,* 47 Ga. App. 629, 171 S. E. 187; *Bunch* v. *McLeskey,* 173 Ga. 545, 161 S. E. 128. In the last case, the trial court instructed the jury that they might use 6 or 7 per cent, and the case was reversed; the court holding that the legal rate (7 per cent) should have been used. In the case of *Aetna Life Ins.*

*Co.* v. *Geher* (C. C. A.) 50 F. (2d) 657, 659, there was an issue made of the amount of interest commonly paid on safe investments, but no proof offered on the issue. In figuring the present worth of insurance policies, the trial court used 4 per cent. This was held error; the court saying:

"The present worth of a sum of money payable in the future without interest is such a sum as being put at interest at the legal rate will amount to the sum named in the respective policies."

Respondent calls our attention to the language used by the Circuit Court of Appeals in the appeal of the case between these same parties (*Southern Pacific Co.* v. *Klinge,* 65 F. (2d) 85, 87), wherein the court held it was not error for the trial court to refuse to give defendant's requested instruction that their verdict of present value should be computed on the assumption that money could be safely invested at the legal rate of 8 per cent. We do not have the record in that case before us. The language used by Judge McDermott is:

"Whether the statutory rate on judgments is even evidentiary might be questionable; but certainly it is not conclusive."

The case was reversed on other grounds, so that the above statement need not be taken as a holding contrary to the views herein expressed, and of course it is not the holding here that the legal rate must be the rate used by the jury in figuring present worth. All that we are required to hold is that in the absence of any testimony or showing as to what was the rate of interest at which money could be safely invested by a person without special financial training, or of any request for further instructions on the subject, it was not error to instruct the jury that they *may* use the legal rate.

I fully concur in the opinion of Chief Justice ELIAS HANSEN herein. It should not be overlooked that at the time this instruction was given, the highest legal rate of interest in this state was 12 per cent per annum, and not 8 per

cent, and that the language of the Supreme Court of the United States is that, "we do not mean to say that the discount should be at what is commonly called the 'legal rate' of interest; that is, the rate limited by law, *beyond which interest is prohibited*," and that the rule that the measure of damages in cases of this kind should be upon the basis of present value "has become an integral part of the statute. It should be *accepted and followed*." (Italics added.)

And yet, apparently the thing that is condemned here is that the instruction was so erroneous as to sustain an order granting a new trial, because it permitted the jury to use 8 per cent, or "at least gave the jury to understand they could do so." I find nothing in the authorities to sustain this ruling. Indeed, it seems to me they reach the opposite conclusion. If it is the majority ruling that the word "may" use 8 per cent was, in effect, telling the jury they "must" use that rate of interest, my answer is that the instruction did not use the word "must," and there is nothing in the verdict to indicate that the jury was misled by the instruction. But whatever the reason assigned by the majority in their various opinions, it seems to me the ruling puts an unfair burden on the defendant of either offering evidence of the earning power of money, or leaving the jury to speculate on what rate of interest they will use, and constitutes an unwarranted limitation on the rights of the defendant in applying this mandatory rule of the Supreme Court of the United States in these cases that such damages must be awarded on the basis of present worth.

In my opinion, there was no error in the trial proceedings justifying the ruling granting the new trial, and, therefore, the trial court erred in granting the motion for a new trial, and the order in this case should be that the order granting the new trial and the order dismissing the case should be vacated and set aside, and the case remanded to the district court, with instructions to reinstate the judgment in favor of plaintiff and against the defendant for $12,000 and interest, in accordance with the verdict of the jury.

ELIAS HANSEN, Chief Justice (dissenting).

Our State Constitution, art. 8, § 9, provides that:

"From all final judgments of the district courts, there shall be a right of appeal to the Supreme Court. The appeal shall be upon the record made in the court below and under such regulations as may be provided by law."

The law is well settled in this jurisdiction that while an appeal may not be had from the order granting a new trial, because such an order is not a final judgment, yet, when an appeal is taken from a final judgment, the order granting a new trial may be reviewed. *Hirabelli* v. *Daniels,* 44 Utah 88, 138 P. 1172. The dismissal of this action without prejudice was a final judgment. The cause was put out of court. If, after the new trial was granted, the case had again proceeded to trial in that court, and if upon a retrial plaintiff had secured a larger judgment, the defendant would have a right upon an appeal from the second judgment to a review of the proceedings had on the first trial. Defendant having such a right, it follows that the same could not be cut off by dismissing the action pending and commencing a new action for the same cause. It is a familiar rule of law that one may not accomplish indirectly that which he may not accomplish directly. If, as the cases in this jurisdiction hold, the defendant has a right to review an order granting a new trial in the event the same action is again prosecuted in the same court, it is difficult to perceive upon what principle of law such right may be defeated by dismissing such action without prejudice and beginning a new action involving the same parties and the same subject-matter in the same or a different court. Parties to a judgment properly rendered acquire vested rights therein. They are entitled to their day in court when such rights are brought in question, and, when either claims that the trial court has improperly disturbed its or his rights in a judgment, it or he is entitled to have such matter reviewed by this court.

It is urged on behalf of the respondent that defendant, having prayed that plaintiff take nothing by his complaint and the action having been dismissed, has secured the judgment for which he prayed, and, therefore, may not be heard to complain. If the judgment of dismissal had been with prejudice, there would be merit to respondent's contention, because in such case the defendant would have received all that it prayed for. However, it may not be said that a judgment of dismissal without prejudice is the kind of judgment for which defendant prayed. Cases are cited by respondent in which it is held that, after a new trial is properly granted, plaintiff has the same right to dismiss the action as he had before the case was tried. The cases so holding are not in point where a new trial is improperly granted. Obviously if a judgment is vulnerable to attack, and is successfully attacked by setting it aside and granting a new trial, there can be no vested interest in a judgment so vacated. Appellant has a right to appeal from the judgment of the district court of Salt Lake county dismissing without prejudice plaintiff's action, and to have reviewed by this court in connection with such appeal the order granting a new trial.

Respondent further contends that a new trial was properly granted because (1) the court below improperly instructed the jury as to the law; and (2) the verdict rendered on the trial had in the state district court was so inadequate in amount as to indicate that the same was rendered under the influence of prejudice or passion. The instruction complained of reads as follows:

"In considering the element of loss in wages, if any, which the plaintiff may sustain in the future on account of the loss of his arm, you are instructed that it is proper to consider plaintiff's expectancy of life. You are further instructed, however, that such loss must be figured on the basis of the present value thereof; that is to say, the present value of a yearly income equivalent to the probable reduction of plaintiff's earnings. The most the plaintiff would be entitled to as compensation for the impairment or loss of future earning power would be, not the total amount in wages which he would probably earn during his life expectancy, but the value or equivalent if paid

now in a lump sum by the defendant in advance instead of being earned and received in monthly installments during the remaining years of his life.

"You are further instructed that the legal rate of interest fixed by the law of this state is eight per cent, and in computing the present worth of money as recited in the foregoing paragraph of this instruction you may figure it on the basis of eight per cent per annum."

Plaintiff objected to the whole of the foregoing instruction and particularly to that portion thereof which permitted the jury to figure the earning power of money "on the basis of eight per cent per annum." It is the latter part of the instruction that respondent here urges was erroneous and prejudicial. He contends that the jury should have been permitted to determine the earning power of money without any suggestion by the court. In support of such contention, he cites, among others, the cases of *Chesapeake & O. R. Co.* v. *Kelly*, 241 U. S. 485, 36 S. Ct. 630, 632, 60 L. Ed. 1, 117, L. R. A. 1917F, 367; *Gulf, C. & S. F. R. Co.* v. *Moser*, 275 U. S. 133, 134, 48 S. Ct. 49, 72 L. Ed. 200, 203; and *Southern Pacific Co.* v. *Klinge* (C. C. A.) 65 F. (2d) 85. In the Kelly Case, the Supreme Court of the United States said:

"We do not mean to say that the discount should be at what is commonly called the 'legal rate' of interest; that is, the rate limited by law, beyond which interest is prohibited. It may be that such rates are not obtainable upon investments on safe securities, at least, without the exercise of financial experience and skill in the administration of the fund; and it is evident that the compensation should be awarded upon a basis that does not call upon the beneficiaries to exercise such skill, for where this is necessarily employed, the interest return is in part earned by the investor rather than by the investment. This, however, is a matter that ordinarily may be adjusted by scaling the rate of interest to be adopted in computing the present value of the future benefits; it being a matter of common knowledge that, as a rule, the best and safest investments, and those which require the least care, yield only a moderate return."

The Moser Case, supra, in effect reaffirms the doctrine announced in the Kelly Case. The case of *Southern Pacific Co.* v. *Klinge,* supra, involves the same parties and the same

subject-matter as are involved in the case under review. In that case the Tenth Circuit Court of Appeals said:

"Error is assigned because the trial court declined to charge the jury that their verdict should be computed on the assumption that money could safely be invested at eight per cent, the legal rate in Utah. The trial court was clearly right. The jury should determine from the evidence what interest could be fairly expected from safe investments which a person of ordinary prudence, but without particular financial experience or skill, could make in that locality. *Chesapeake & Ohio Ry. Co.* v. *Kelly*, 241 U. S. 485, 36 S. Ct. 630, 60 L. Ed. 1117, L. R. A. 1917F, 367. Whether the statutory rate on judgments is even evidentiary might be questionable; but certainly it is not conclusive."

As will be seen from an examination of the cases cited in the dissenting opinion of Judge HARRIS there are a number of state courts and possibly some federal courts which hold that the legal rate of interest should be used in computing the present value of money to be awarded as damages in tort actions. It is not necessary in the instant case to discuss the merits of the cases so holding because this being an action brought under the Federal Employers' Liability Act (45 U. S. C. A. §§ 51-59), the decisions of the Supreme Court of the United States touching the law applicable to such actions as this are binding upon us. *Gulf, C. & S. F. R. Co.* v. *Moser*, supra. The language of the Supreme Court of the United States in the Kelly Case, heretofore quoted, seems to clearly indicate that it may not be assumed that money may be safely invested at the legal rate of interest, and hence, as expressed by the Circuit Court of Appeals in this cause,

"The jury should determine from the evidence what interest could be fairly expected from safe investments which a person of ordinary prudence, but without particular financial experience or skill, could make in that locality."

If there were any evidence touching that question in the case before us for review, a proper instruction could be readily formulated. But in the trial in the state district court of the case in hand, no such evidence was offered or

received.  None of the federal cases cited aid us as to the proper instruction to be given under such circumstances.  A jury cannot find from the evidence what rate of interest "could be fairly expected" when there is no evidence touching that question.

In the absence of such evidence, it would be idle to give an instruction such as that indicated by the Circuit Court of Appeals when this question was before it.  It is fair to assume that when the Legislature fixed the legal rate of interest on money judgments or money due and owing, and in the absence of an agreement to the contrary, at 8 per cent per anuum, that such rate bears some relation to the interest that money can fairly be expected to bring.  The courts have quite uniformly adopted that measure of damages in such actions as replevin.  Sutherland on Damages, vol. 4 (4th Ed.) § 1144, p. 4312.  While I readily accede to the doctrine announced by the Circuit Court of Appeals in the case of *Southern Pac. Co.* v. *Klinge,* supra, still, in the absence of proof as to what money may fairly be expected to earn, I can see no escape from the conclusion that the jury may, as stated in the instruction under review, use the legal rate of 8 per cent per annum as a basis of arriving at the reasonable earning power of money.  In the absence of evidence tending to show that such a rate is greater than may fairly be expected, plaintiff has failed to show that he has been prejudiced by the instruction complained of.

As to the claim of respondent that the verdict is so inadequate as to justify the granting of a new trial on the ground that the jury was influenced by passion or prejudice, I concur in what is said with respect thereto in the dissenting opinion of Judge HARRIS.  Respondent in his brief touching the claimed inadequacy of the verdict proceeds upon the assumption that his earning power has been totally destroyed by the loss of his arm.  There is some evidence to that effect.  However, it may not be said that the jury was bound to believe such evidence.  It is a matter of common knowledge that many persons who have lost an arm are capable

of and do earn a substantial income. The jurors saw the plaintiff and were at liberty to draw upon their own experiences and use their own judgment as to whether or not his earning power was totally destroyed, and, if not, what in their judgment he was probably capable of earning. 17 C. J. 903, 904.

In my opinion, the court below should be directed to reinstate the former judgment.

MOFFAT, J., being disqualified, did not participate herein.