**WHITE et al. v. CITY OF WACO et al.**
**No. 2511.**

Court of Civil Appeals of Texas. Waco.
April 15, 1943.

Rehearing Denied May 27, 1943.

Bryan & Maxwell, of Waco, for appellants.

Geo. W. Morrow, City Atty., and W. L. Eason, both of Waco, for appellees.

HALE, Justice.

The City of Waco instituted this proceeding in the exercise of its right of eminent domain by filing with the County Judge of McLennan County a written statement in literal compliance with the provisions of Article 3264 of Vernon's Tex.Civ.Stats. It sought to condemn three tracts of land for use as a municipal airport. The County Judge appointed commissioners, who, after notice to the owners and a hearing thereon, filed their award on May 19, 1941, assessing the damages to the first and second tracts together at $16,210.40, and to the third tract at $1,466.44. The award recited that Frank Washington and wife, Susetta, and First National Bank of Waco were the owners of the third tract, that Washington and wife were the owners of an undivided one-half interest in the first and second tracts, to whom damages were awarded in the sums of $1,466.44 and $8,105.20, respectively, but that the commissioners were unable to determine the respective interests of the owners of the other one-half of the first and second tracts, and that by agreement of the parties no apportionment of damages was made as to such interests.

On May 29, 1941, Frank Washington filed his objections to the award, in which he stated specifically that he did not object to the condemnation of the property, to the amount of the damages assessed, or to the decree that he be paid one-half of the damages to the first and second tracts and all of the damages to the third tract, but that he did object to that portion of the award in which it was recited that the commissioners were unable to determine the respective interests of the parties to the other one-half of the first and second tracts, it being his contention that all of such damages should be awarded to him. No other objections having been filed, the City of Waco paid the entire amount of the damages assessed against it into the registry of the court on May 30, 1941. Thereupon the County Judge entered an order directing the clerk to pay over to Washington, his wife, and the First National Bank of Waco the sums specifically awarded to them, which was accordingly done, thereby leaving a balance of $8,105.20 in the registry of the court. Such proceedings were all had and done in conformity with the requirements of Title 52 of Vernon's Tex.Civ.Stats.

On August 28, 1941, Mrs. Susie E. White and others filed their answer to the objections of Frank Washington, in which they sought to abate such objections on the ground that the County Court had no jurisdiction to determine the issues therein sought to be raised. Subject to the action of the court on their plea in abatement, they asserted by way of cross-action that they were entitled to a portion of the fund retained in the registry of the court. The case was tried before the court without a jury and resulted in judgment (1) vesting title to the three tracts of land in the City of Waco for use as an airport, (2) confirming the payment of $17,676.84 into the registry of the court by the City of Waco in full satisfaction of the damages assessed against it, (3) confirming the payment by the clerk to Frank Washington, his wife, Susetta, and First National Bank of Waco of the sums of $1,466.44 and $8,105.20, respectively, and (4) awarding the balance of $8,105.20

in the registry of the court as follows: (a) to Frank Washington $4,305.16 as the value of his life estate in one-half of the first and second tracts; (b) to Myrtle Washington Tate $2,682.23 as the value of her life estate in said property; and (c) to Mrs. Susie E. White and others in equal portions $1,117.81 as the value of their interest as remaindermen in said property. From this judgment Mrs. Susie E. White and others have perfected their appeal to this court.

The first point in appellants' brief is: "The matter in controversy was not within the jurisdiction of the County Court for the reason that it was a suit for title and possession and the distribution of a sum in excess of One Thousand ($1000.00) Dollars." They assert that the suit was actually one for title, possession and distribution of the $8,105.20 in the registry of the court as between the claimants to the fund, and that the City of Waco is not concerned in the appeal, it being a party pro forma only.

Frank Washington was born June 18, 1879. The first and second tracts consisted of 184 acres, was the community property of Washington and his first wife, Elizabeth, and constituted their homestead. Mrs. Myrtle Washington Tate, their daughter, was born February 27, 1910. Elizabeth Washington died on November 28, 1935, leaving a will which was duly admitted to probate in the County Court of McLennan County, by the terms of which she appointed her husband independent executor and devised to him a life estate in her undivided one-half interest in and to their community property and subject thereto she devised a second life estate in the property to her daughter, with remainder share and share alike to her sisters and brothers who are appellants herein. It was agreed on the trial that a person 62 years of age has a life expectancy of 12.86 years, and that a person 31 years of age has a life expectancy of 34.63 years.

As we view the record, there has never been any bona fide dispute among the parties as to the title to the 184 acres, or as to the undivided interest which each of the condemnees owned therein. The difficulty in apportioning the damages arose solely by reason of the controversy among the parties as to the value of their respective interests in the land and the manner in which the damages sustained by each should be arrived at. It was and is the contention of Frank Washington that since he was independent executor of the will of his deceased wife and owned a life estate in one-half of the 184 acres, the entire amount of the damages should have been awarded to him to be used during his lifetime in accordance with the terms of the will of his deceased wife. On the other hand, it was and is the contention of appellants that the only right of Washington in and to the fund was the present value of his life estate in the land, computed on the basis of his life expectancy and a reasonable rate of interest and discount. They also contend that the present value of the life estate of Mrs. Myrtle Washington Tate should have been calculated in like manner and that, after payment from such fund of the value of the two life estates thus computed, the balance thereof should have been awarded to them as remaindermen under the will of their deceased sister. No question is here raised as to the validity of the judgment appealed from except insofar as the same makes disposition of the $8,105.20 now in the registry of the court below.

■■ Since each step taken in the proceedings up to and including the filing of their answer by appellants on August 28, 1941, was in conformity with the requirements of Title 52 of Vernon's Tex.Civ. Stats., we are of the opinion that the County Court properly acquired jurisdiction generally over the matter in controversy, even though the same did involve the present worth of life estates in land and the distribution of a sum of money in excess of $1,000. Gulf Coast Irrigation Co. v. Gary, 118 Tex. 469, 14 S.W.2d 266, 17 S.W. 2d 774; Hill v. City of Bellville, Tex.Civ. App., 30 S.W.2d 407; Vogel v. State, Tex. Civ.App., 50 S.W.2d 348; Cook v. Ochiltree County, Tex.Civ.App., 64 S.W.2d 1018; Houston North Shore R. Co. v. Tyrrell, 128 Tex. 248, 98 S.W.2d 786, 108 A.L.R. 1508. Having acquired jurisdiction generally over the subject matter in controversy, we think the County Court was also vested with judicial power and authority under the express provisions of Title 52 of the statutes to determine in this proceeding the value of the interest which each condemnee owned in the land condemned, and to apportion among them separately the damages which the commissioners had awarded to them collectively. City of Paris v. Tucker, 101 Tex. 99, 104 S.W. 1046; Rabb v. La. Feria Mut. Canal Co., Tex.Civ.App., 130 S.W. 916, error denied;

Walsworth v. San Antonio & A. ·P. Ry. Co., Tex.Civ.App., 10 S.W.2d 194; Missouri-Kansas-Texas R. Co. v. Jones, Tex. Com.App., 24 S.W.2d 366; Hardy v. City of Throckmorton, Tex.Civ.App., 62 S.W.2d 1104.

The second point in appellants' brief is: "The court erred in its judgment wherein it assumed as a matter of law that six per cent was a reasonable rate of interest and discount, in that such finding was contrary to the only evidence introduced thereon in the trial, for the reason that the only evidence as to the reasonable rate of interest and discount was from three to three and one-half per cent." They assert that the judgment was therefore excessive in its awards to Frank Washington and Myrtle Washington Tate and was inadequate in its award to them.

Upon request of appellants, the trial court filed findings of fact and conclusions of law, finding the life expectancy of Frank Washington and Myrtle Washington Tate, and that "the present worth of the life estate of Frank Washington in and to the said $8,105.20, based on a rate of interest and discount of six per cent, is $4,305.16; * * * the present worth of the second life estate, to-wit, of Mrs. Myrtle Washington Tate, based on a rate of interest and discount of six per cent, is $2,682.23; * * * the balance in the registry of the court after deducting the life estates of Frank Washington and Myrtle Washington Tate, respectively, is $1117.81." The court concluded that Frank Washington was entitled to receive the value of his estate for an expectancy of 12.86 years from May 30, 1941, calculated at an interest and discount rate of six per cent; that Myrtle Washington Tate was entitled to receive as the value of her life estate, beginning upon the expiration of her father's life estate and continuing thereafter for the remainder of an expectancy of 34.63 years, calculated at six per cent interest and discount; and that the balance of the fund in the registry of the court should be paid in equal portions to appellants. Judgment was rendered accordingly.

The only evidence in the record tending to show a reasonable rate of interest and discount as applied to the two life estates involved is the testimony of Charles E. Schuler, a witness tendered by appellants. This witness testified that he was Vice-President of the Citizens National Bank of Waco, had been in the banking business more than twenty-five years, and had experience in such business with investments and securities; that in his opinion a reasonable rate of interest for a reasonably safe investment for a period of twelve or more years is from three to three and one-half per cent; that for a period of thirty years or more, it would be not more than three and one-half per cent; that a reasonable rate of discount for a reasonably safe investment over a period of time from twelve to thirty years or more was not in excess of three and one-half per cent; and that such rate was more than that allowed by the government on its bonds. On cross-examination the witness testified that short time loans and loans of higher credit hazards carried a higher rate of interest; that his bank made no long time loans at six or eight per cent; that they did make some short current loans at six per cent; and that paper discounted at eight per cent or even six per cent was either short term or of a less margin of safety.

Had Frank Washington objected to a partition of the proceeds accruing from the condemned homestead of his family, it would have become the duty of the Judge of the County Court to have authorized and directed a reinvestment of the $16,210.40 in another homestead in such manner as to indicate by proper recitations in the judgment of the court the interest therein of the other interested parties, subject to the homestead use thereof by him during his life or for such period as he might have elected to so use the same. See Lucas v. Lucas, 104 Tex. 636, 143 S.W. 1153. However, he made no such objection. On the contrary, he accepted the $8,105.20 awarded to him by the Commissioners in condemnation. While he asserts in his brief that the court below should have awarded the remaining $8,105.20 to him either individually or as executor, he does not ask that the judgment be reversed but prays "that the judgment of the trial court be affirmed, and in the alternative that the full amount of $8,105.20 be adjudged by this court to him, either individually or as executor, as seems best to the court."

In our opinion Frank Washington was not entitled either as executor or devisee under the will of his deceased wife to have awarded to him unconditionally the entire amount of the damages to the 184

acres, his only remaining right in the premises being to receive the commutable value of his life estate in said land. Consequently, the question of law squarely presented to this court for decision is whether the value of the two life estates involved in this controversy should have been measured by a reasonable rate of interest and discount or by the so-called legal rate of six per cent. It is readily apparent that if such values should have been computed on the basis of a reasonable rate in fact, then the judgment appealed from should be reversed because in such event the amounts awarded to Frank Washington and Myrtle Washington Tate were each clearly excessive under the evidence, with the necessary result that the amount awarded to appellants was inadequate. Contrarily, if such values should have been computed on a rate of six per cent as a matter of law, then the judgment appealed from should be affirmed.

Article 5069 of Vernon's Tex. Civ.Stats., defines interest as "the compensation allowed by law or fixed by the parties to a contract for the use or forbearance or detention of money." The next succeeding Article provides that "when no specified rate of interest is agreed upon by the parties, interest at the rate of six per cent per annum shall be allowed on all written contracts ascertaining the sum payable, from and after the time when the sum is due and payable." However, we do not think these statutory provisions are of controlling effect in their application to the facts of this case. There was no contractual obligation between any of the parties to this suit and no sum of money ever became due and payable from any one of the condemnees to any of the others. Each was entitled to participate in the distribution of the damages assessed in proportion to his or her commutable interest in the 184 acres of land. The present pecuniary worth of each life estate was necessarily dependent upon the total amount of net returns that might have been reasonably expected to accrue during the life expectancy of the owner thereof, less a reasonable rate of discount for such commuted value. But in the absence of any factual basis therefor, we do not think the trial court could properly find or assume as a matter of law what amount of net returns might have been reasonably expected to accrue over a period of time ranging from 12 to 31 years from the 184·

acres of land, or from the sum of $8,105.20 invested in a reasonably safe investment, or what a reasonable rate of discount would be for the commuted value thereof.

In the case of Grand Fraternity v. Nicosia, 41 S.W.2d 684, 686, this court held that the commuted value of the certificate of life insurance there involved might be ascertained by subtracting from the face amount of the policy the premiums which would have become due during the period of life expectancy with interest compounded at a reasonable rate, rather than upon the statutory rate of six per cent. The court, speaking through Justice Alexander, there said: "We think that, when under the circumstances it is necessary that the interest be compounded in order to administer justice, and the rate of such compound interest is not fixed by contract, evidence should be introduced showing what would be a reasonable rate to use in compounding the interest. Herzing v. Texas Employers' Ins. Ass'n, Tex. Com.App., 17 S.W.2d 1046, par. 1; United States Fidelity & Guaranty Co. v. Nettles, Tex.Com.App., 35 S.W.2d 1045, par. 1."

The rule of law announced in the cited cases, and applied in other cases construing the provisions of the Texas Workmen's Compensation Act, Vernon's Ann. Civ.St. art. 8306 et seq., as the same existed prior to the amendment authorizing the rate of discount to be used in arriving at the commuted value of lump sum settlements, appears by analogy to be applicable and controlling here. The rule thus established was that such value should be arrived at by applying a reasonable rate of discount rather than the legal rate of six per cent. Traders' & General Ins. Co. v. Powell, Tex.Com.App., 65 S.W.2d 269 and authorities cited. See, also, Texas & Pacific Ry. Co. v. Perkins, Tex.Com.App., 48 S.W.2d 249, pars. 9 and 10; Klinge v. Southern Pacific Company, 89 Utah 284, 57 P.2d 367, par. 2, 105 A.L.R. 204.

Wherefore, we hold that the value of the two life estates involved in this controversy should have been measured by a reasonable rate of interest and discount and the trial court erred in assuming as a matter of law contrary to the evidence that. six per cent was a reasonable rate. Because of such error, the judgment appealed from is reversed and the cause is remanded for further proceedings in accordance with this opinion.

### On Motion for Rehearing.

Appellees say they were entitled to just and adequate compensation for the damages sustained on account of the condemnation of their interest in the 184 acres of land. Undoubtedly they were. They also insist they "were entitled to recover legal interest as indemnification or damages and not as interest eo nomine." As stated in the original opinion, each condemnee was entitled to participate in the apportionment of the damages assessed in proportion to his or her commutable interest in the land. The commuted value of the interest of appellees in the land was necessarily dependent, to some degree at least, upon the total amount of net returns that might have been reasonably expected to accrue to them from the use thereof during the life expectancy of each, less a correct rate of discount. The present worth of the interest of appellants was also dependent in a measure upon the same considerations. These were proper elements to have been considered in arriving at the amount of money which, if paid in cash, would have reasonably compensated each and all interested parties for the damages resulting from the condemnation of the land.

However, the amount of the entire damages resulting from the condemnation of the land was finally disposed of by the report of the special commissioners appointed to appraise the damages. Such amount was not an issuable fact at the time of the contested trial. The land had then been converted by operation of law into the cash sum of $8,105.20. This sum of money paid in cash on May 30, 1941, by the City of Waco into the registry of the court must necessarily be now regarded as just and adequate compensation to each and all of the former owners of the land for all the damages each has sustained. This sum of money should now be divided among the former owners of all interests in the land on a ratable and proportionate basis and not disproportionately. It is now immaterial what the land or any interest therein might have been worth, or what its reasonable rental value might have been, or what the value of its use might have been to appellees had it not been converted into money. The sole issue before the court below at the time of the trial was the value of the use of $8,105.20 during the life expectancy of Frank Washington and Myrtle Tate. We were and still are of the opinion that such value should have been measured by applying a reasonable rate of interest and discount to such fund.

In their motion for rehearing appellees cite and urge the case of Coffman v. Gulf C. & S. F. R. Co., Tex.Com.App., 23 S. W.2d 304, as a controlling authority in support of the judgment of the trial court. Although this case was not cited in the original briefs, we considered the same before our original judgment and opinion was rendered and handed down and reached the conclusion that the holding in that case is not applicable to the issue involved in the case at bar. In the first place, the Coffman case was an action for the recovery of unliquidated damages resulting from tort, whereas in the present proceedings the damages have been liquidated and no tort is or ever was involved. In the Coffman case the Railway Company became liable to the holder of the life estate for the damages resulting from its tort at the time when the property was destroyed, whereas in the present case appellants are not now and never have been liable to appellees for any damages sustained as a result of the condemnation, and the City of Waco promptly discharged its obligation in full. In the Coffman case the holder of the life estate, being entitled to the immediate use of the proceeds which were later recovered from the wrongdoer, was denied the use of such proceeds by the failure and refusal of the tort feasor to discharge its legal duty, whereas in the present case Mrs. Tate has not yet become entitled to the use of the proceeds arising from the condemnation and Frank Washington has not been denied any right with respect thereto through the failure of the City of Waco to discharge its legal duty or through the breach of any duty owed to him by appellants. Hence we do not think the Coffman case is in point as an authority in this case.

Notwithstanding the able arguments of counsel for appellees, we have concluded that their motion for rehearing should be and the same is hereby overruled.